```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

COMPASS, INC., ET AL.,

            Plaintiffs,

     v.                              21 CV 02195 (AJN)
                                     Telephone Conference
REAL ESTATE BOARD OF NEW YORK,
INC.,

            Defendant.
------------------------------x
                                     New York, N.Y.
                                     June 25, 2021
                                     3:21 p.m.
Before:

                HON. ALISON J. NATHAN,

                                     District Judge

              APPEARANCES VIA TELECONFERENCE

CROWELL & MORING, LLP
     Attorneys for Plaintiffs
BY:  CHAHIRA SOLH
     DIANE SHREWSBURY
     GLEN GARRETT McGORTY

STROOK & STROOCK & LAVAN, LLP
     Attorneys for Defendant
BY:  CLAUDE G. SZYFER
     PATRICK N. PETROCELLI
```

1                 (The Court and all parties appearing telephonically)
2                 THE COURT:  Good afternoon, everyone.  This is Judge
3     Nathan.  I'll ask Ms. Williams to please call the case.
4                 (Case called).
5                 MS. SOLH:  Good afternoon, your Honor.  Chahira Solh
6     from Crowell and Moring for the Compass plaintiff, and I'm
7     joined by my colleagues, Glen McGorty and Diane Shrewsbury.
8                 THE COURT:  Good afternoon, Ms. Solh, to you and your
9     colleagues.  Thank you very much.
10                And on behalf of defense?
11                MR. SZYFER:  Sure, your Honor.  Good afternoon.
12    Claude Szyfer from Stroock and Stroock and Lavan on behalf of
13    the defendant, Real Estate Board of New York, which I'll refer
14    to as "REBNY" just for short.  And I'm joined by my colleague,
15    Patrick Petrocelli.
16                THE COURT:  Good afternoon, Mr. Szyfer and to your
17    colleague as well.  Thank you.
18                And can I confirm we have our court reporter on the
19    line, please?
20                THE REPORTER:  Yes, your Honor.  I'm here.  Good
21    afternoon.
22                THE COURT:  All right.  Good afternoon, Rose.  Thank
23    you so much.
24                All right.  We're here for a pretrial conference in
25    the antitrust matter.  I did receive the parties' joint letter

        and the case management plan.  It seems as though the primary dispute for resolution today is whether to stay discovery pending briefing resolution of the motion to dismiss.

        But, Ms. Solh, I'll give you the floor.  Tell me what you think I need to know for purposes of resolving how we should proceed with discovery at this time, and any other matters I can address from your perspective.

        MS. SOLH:  Thank you, your Honor.  And thank you for taking the time to meet with us today.  As you indicated, in the case management letter and schedule that we filed, the parties are in general agreement about the schedule itself. Really, the main issue is the start of discovery.

        Compass is ready to proceed with discovery, and we don't believe a stay is necessary.  REBNY, obviously, does believe a stay is necessary.  As you may know, we are in the middle of the motion to dismiss briefing, and Compass will file its opposition on July 2nd to the motion to dismiss, and REBNY will be filing its reply on July 30th.

        We believe that, under the case law, it's REBNY's burden to show good cause of why discovery should be stayed, and we don't believe they have done so.  I'm happy to walk through the factors that the Court should consider, but we believe that the only issue really is the stay on discovery.

        THE COURT:  Sure.  No, I appreciate that.  I think the questions I tend to ask in this posture -- obviously, I don't

1    have your opposition briefing yet on the motion.

2              I've looked at the motion.  It does appear if the
3    motion is successful, would be fully dispositive; so I tend to
4    ask that question, and sometimes discovery would be useful,
5    even if fully dispositive here, because the case might proceed
6    in state court.  You do have state court claims as supplemental
7    jurisdiction to this matter; so I suppose that has implication
8    here.

9              Why don't you tell me what discovery generally
10   consists of, what it will look like, and what harm flows, if
11   any, from staying discovery until resolution of the motion.

12             MS. SOLH:  Thank you, your Honor.  And I appreciate
13   that you haven't yet seen our brief in opposition to the motion
14   to dismiss, but when you do, I think you'll find that there are
15   strong arguments as to why we think dismissal is inappropriate.

16             And I don't want to turn this into a motion to dismiss
17   argument, but we do think that -- we don't believe that REBNY's
18   motion to dismiss is going to be fully dispositive.  And we
19   think that -- in fact, I don't know that it will really narrow
20   the claims here.

21             What we'd like to focus discovery on, really, is there
22   is one particular rule that is at issue in this litigation, and
23   it's Article II, Section 7 of the Universal Co-brokerage Rules.
24   And there are really three types of discovery or three requests
25   that we would like to make.

And in full disclosure, your Honor, we have served our rule 26 disclosure, initial disclosures, and served the requests for document production already. And there are three requests in there that we really think would stand out, and really be important for us right now, and would allow us to move forward with the case.

And those would be documents and communications related to the adoption of Article II, Section 7; documents and communications related to the enforcement of Article II, Section 7; and documents and communications related to amendments of Article II, Section 7.

And those are really all of -- relate to the claims that we are making in the complaint. And the prejudice to Compass really would be that -- you know, REBNY at this point, if there was a stay in discovery, there are a few different things that occur. REBNY has decided, at least for some of the complaints that are on file inside of REBNY related to Article II, Section 7, but it's going to stay those hearings. But it could reinstate the hearings on Article II, Section 7 complaints hearing at any time.

And even if they don't actually hear those complaints, at this point, agents' mobility is still hindered and Compass' ability to recruit agents is still limited with this litigation pending. And there will be some discovery that I think will rely on actual, you know, recollections of witnesses and

1    discussions that have been had.  And as we all know, memories
2    fade over time; so it's important for us to start really
3    gathering information that could be lost over time.
4            THE COURT:  And that concern over stale evidence is
5    met with those three categories of discovery that you just laid
6    out, or it goes beyond that?
7            MS. SOLH:  I think it would be.  Obviously, at some
8    point, we would like to probably depose some people related to
9    those but understanding that that would come at a later time.
10           THE COURT: Right.  Okay.  All right.  I understand
11   your position.  Thank you.
12           Let me hear from Mr. -- tell me how to say your name
13   again?
14           MR. SZYFER:  Yes, of course, Judge.  It's Szyfer.
15   It's a lot easier to pronounce than it looks.
16           THE COURT:  Szyfer, you're right.  Go ahead,
17   Mr. Szyfer.  Thanks.
18           MR. SZYFER:  Sure, of course.  So, your Honor, while
19   in the letter and while Ms. Solh has represented to the Court
20   that they just want discovery relating to just what they claim
21   are three limited subject matters, they actually served us with
22   their document requests on Monday and their 15, very broad,
23   separate document requests, many of which have subparts.
24           I'm happy to read you a couple of them.  It's -- some
25   of them are seven, eight lines long, but even more importantly,

while representing to the Court that they only seek discovery on just this limited subject matter, they don't.  They actually seek much broader discovery.

There's a request for production showing how widespread the use of the REBNY listing service is.  There's a request for production to show how much revenue we have made.  There's analyses regarding New York law.  They've requested all documents and communications between REBNY and, you know, the alleged co-conspirators, Douglas Elliman and Corcoran regarding Compass.

And then they've even requested all communications between REBNY and Corcoran and Elliman regarding exclusive listings for any brokerage in New York City.  And I can represent to the Court that there are over 500 brokerage firms that are members of REBNY.

So while Ms. Solh has said that, you know, they're only looking for things relating to Article II, Section 7, their actual document requests belie that.  That's No. 1.

No. 2.  With respect to the prejudice, I think it's fair for your Honor to know, issues relating to Article II, Section 7 have been raised by Compass for actually almost two years.  And they waited almost two years to file this lawsuit.  A brief stay of discovery here, while the motion to dismiss is pending, is not going to cause Compass any prejudice.

And as Ms. Solh represented to the Court, we have

Case 1:21-cv-02195-AJN   Document 27   Filed 07/22/21   Page 8 of 18      8
L6PPCOMC

|   |   |
|---|---|
| 1 | agreed to stay any pending hearings relating to Article II, |
| 2 | Section 7, and we're not going forward with those.  And we've |
| 3 | represented to Compass that we're going to do that pending the |
| 4 | litigation.  We're not about to just change our minds and go |
| 5 | forward with those.  And agent -- |
| 6 |     THE COURT:  Pardon me. |
| 7 |     MR. SZYFER:  Yes, your Honor. |
| 8 |     THE COURT:  Do you make that representation to the |
| 9 | Court, that you'll stay Article II -- |
| 10 |     MR. SZYFER:  That's right. |
| 11 |     THE COURT:  -- Section 7 proceedings? |
| 12 |     MR. SZYFER:  Yes, your Honor.  With respect to Compass |
| 13 | and the complaints against them, we do represent that -- we |
| 14 | will make that representation. |
| 15 |     And as we've made clear in our motion to dismiss, and |
| 16 | again without getting into the motion to dismiss in a |
| 17 | substantive way, agent mobility is not in any way impaired by |
| 18 | Article II, Section 7.  As Compass has admitted in its |
| 19 | complaint, they had approximately 800 agents in 2018, and the |
| 20 | latest numbers is they now have over 2,400.  So even while the |
| 21 | most Draconian version of the rule that they claim is in place, |
| 22 | they have more than tripled in size. |
| 23 |     So, you know, we are very confident that the motion to |
| 24 | dismiss has merit; that it has raised substantial grounds for |
| 25 | dismissal.  As the Court identified, you know, if granted, it |

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    would dismiss the entire case.

2           And a short, you know, stay of discovery pending
3    resolution of the motion to dismiss, and as Ms. Solh said,
4    we're talking now about a month, in terms of briefing and then,
5    you know, having the Court resolve it.  So it's not like we're
6    talking about a major delay in terms of a stay of discovery.
7    We're asking for during the pending motion, and given the fact
8    that they've waited almost two years to bring this suit, you
9    know, they haven't suffered in their recruitment during those
10   two years, and they're not going to suffer now.

11          So, you know, the burden to REBNY to respond to these
12   15 incredibly overbroad requests will be great.  We are a
13   not-for-profit trade association.  We're not a now-public
14   company, which is Compass, with coffers of, you know,
15   tremendous resources.  We are a not-for-profit, and we live on
16   our membership dues.  And having to pay for discovery while our
17   motion to dismiss is pending and potentially going to resolve
18   the entire case would be prejudicial to REBNY, whereas the
19   prejudice is nonexistent to Compass.

20          THE COURT:  Let me ask you, Mr. Szyfer, I understand
21   the argument as to burden and prejudice with respect to what
22   sounds like the current pending discovery requests.  What about
23   a much more constrained approach, consistent with what Ms. Solh
24   said earlier; so as I gather, again, we're talking about docs
25   and communications related to adoption, enforcement and

1    amendment of Article II, Section 7?

2             MR. SZYFER:  Sure, your Honor.  So, first of all,
3    their document requests asks for documents going back
4    six-and-a-half years.  They've asked for documents from
5    January 1st, 2015, to the present.  So it would require us to
6    review and try to identify docs going back six-and-a-half
7    years.

8             And as I mentioned -- so I'll give you an example of a
9    document request they've included here.  It says:  "All docs,
10   including but not limited to:  Communications concerning
11   REBNY's development and adoption of Article II, Section 7 in
12   approximately 2016 through 2018, including but not limited to
13   documents from or related to meetings where the adoption of
14   Article II, Section 7 was discussed; documents related to
15   members reactions to or complaints about the development and
16   adoption of Article II, Section 7; communications between
17   employees regarding the development and adoption of Article II,
18   Section 7; or communications between REBNY and any third party
19   regarding the development and adoption of Article II, Section
20   7."

21            So even just one regarding, you know, the development
22   and adoption, which is essentially one of their key points, is
23   quite overbroad and would ask us to be searching for docs, you
24   know, for an extended period of time relating to a number of
25   different subject matters involving Article II, Section 7.

1    So I would submit that even this limited attempt to --
2 attempt to limit discovery would still be quite broad and quite
3 burdensome for REBNY.
4    THE COURT:  In that example you read, I just wanted to
5 understand the timeframe because you began by saying --
6    MR. SZYFER:  Yes.
7    THE COURT:  -- that they -- please, let me finish.
8    MR. SZYFER:  Sure.
9    THE COURT:  The timeframe, 2013 to present, and then I
10 think what you read in that example was between 2016 and 2018;
11 do I have that right?
12   MR. SZYFER:  Yeah, that's right, your Honor, and
13 apologies, I didn't mean to speak over you.  But then there are
14 other actual requests that relate to Article II, Section 7 that
15 are not limited in time period.
16   For example, request No. 2, which again involves
17 communications regarding the enforcement of Article II, Section
18 7, and that's not limited to the 2016 to 2018 time period.
19   And then also request No. 3, which relates to any
20 revisions to Article II, Section 7, which again is during the
21 relevant time period which they submit is January 1st, 2015, to
22 the present.
23   THE COURT:  2015 to the present.  Okay.  All right.
24 Ms. Solh?
25   MS. SOLH:  Thank you, your Honor.  So I will respond

1  in saying that even though we have been in discussions with
2  REBNY for two years, part of what led to this lawsuit was the
3  fact that we couldn't reach resolution with REBNY over those
4  two years.
5        And so, you know, we've been working hard to try to
6  make sure that Compass continues to be able to compete in the
7  market in New York.  And even though they have grown, they
8  could have and would have grown more had it not been for the
9  anticompetitive conduct of REBNY and the co-conspirators.
10       On the point of the burden and the scope of the
11 discovery requests, you know, I did mention the three requests
12 because your Honor asked me to tell you what would be
13 prioritized for us.  And, you know, the reason we're going back
14 in time to 2015 is because the rule was -- the rule started
15 being contemplated in 2016 and was adopted in 2018.  So that's
16 the scope of the time period.
17       And so both types of documents, obviously, would be
18 relevant to the adoption and then eventually the amendment of
19 the rule.  So that's why we have the scope of those
20 documents -- the time period for those documents.
21       You know, REBNY is a big organization that has tons
22 and tons of other rules and enforcement of other types of real
23 estate issues and does a lot.  And Article II, Section 7 is
24 really just only one of those rules and one -- the one that
25 we're focused on.

1          So while there may be some burden to it, I don't know
2   that it's going to be as significant because we're not prying
3   into all of their business if we are limiting it to the three
4   requests that I've mentioned here.  It would help us move
5   forward and move forward with the litigation itself and make
6   sure that we have access to the information that's necessary.
7          THE COURT:  So just on the timeframe question.  Is it
8   right, then, the timeframe for information about enforcement
9   and amendment would be post 2018, wouldn't it?
10         MS. SOLH:  It would be, yes.
11         THE COURT:  So the communications relating to adoption
12  of the rule would be something like 2016 to 2018?
13         MS. SOLH:  They would be, but -- sorry.
14         THE COURT:  And then the same for enforcement,
15  amendment would be 2018 to present?
16         MS. SOLH:  Before the adoption, it could -- the reason
17  we've gone back to 2015 is because there could have been
18  discussion about the adoption of the rules starting before the
19  rule actually was adopted.  But any revisions or amendments and
20  the enforcement of it would have been focused around the 2018
21  period going forward.
22         THE COURT:  And I agree with you, I don't want to dive
23  into the merits either of the motion or the complaint at this
24  point, but what is the basic relevance of the sort of
25  pre-adoption communications?

1          MS. SOLH:  So part of our allegations are that the
2     rule was adopted specifically to target Compass, and it was
3     done so as part of the conspiracy to adopt this rule, to slow
4     down Compass' growth, and that included REBNY, with Douglas
5     Elliman and Corcoran, working together to find a solution to
6     slow the movement of agents from traditional brokerages, like
7     Douglas Elliman and Corcoran, to Compass, which was a relative
8     newcomer.
9          And so the allegations -- or the information related
10    to the adoption of the rule is going to be important because it
11    will support the fact that this was -- that the reason this
12    rule was adopted was for anticompetitive reasons and to harm
13    Compass.
14         THE COURT:  And tell me again the distinction between
15    a beginning point of 2015 and 2016?
16         MS. SOLH:  We have requested documents going back to
17    2015 because there could have been discussions, you know, prior
18    to 2016, when we really think in earnest these discussions
19    began.  We're not sure.
20         If there are the communications in 2015, but since
21    there seem to have been earnest discussions about this in 2016,
22    we wanted to make sure there wasn't anything earlier, and
23    that's why we've included the earlier start date.  But really,
24    if the Court wanted to narrow it to starting in 2016, that
25    would be fine.

THE COURT:  So the narrow -- the potential narrowed proposal on the table, pending resolution of the motion to dismiss, would be documents and communications related to adoption, enforcement and amendment of Article II, Section 7 between 2016 and 2018; is that right?

MS. SOLH:  I think we would need to go for the enforcement and amendment past 2018 --

THE COURT:  Right.

MS. SOLH:  -- to the present just because that's how -- that's part of the discovery, but yes.

THE COURT:  Yes, you're right.  I misspoke.  So with respect to adoption, 2016 to 2018; enforcement and amendment would be 2018 to present.  That's the proposal?

MS. SOLH:  That's correct, your Honor.

THE COURT:  Mr. Szyfer, so with that specific proposal on the table, just give me a practical sense of what kind of burden that is.  We're talking e-mail searches for key search terms among certain custodians.  What else?

MR. SZYFER:  Yes, it would certainly be a pretty significant burden to have to go back that long in terms of doing e-mail searches, and then also for hard copy documents and things like that, that it would be a pretty significant burden to have to go back that far.

THE COURT:  So really, your argument here, to meet your burden for stay of discovery, Mr. Szyfer, is that you

think you'll likely prevail on a dispositive motion and that the interim discovery being sought is, indeed, quite burdensome to this organization, in light of the time frame and nature of the request; is that right?

MR. SZYFER:  That's right, your Honor, and also, the fact that the prejudice here to Compass, as I mentioned before, would be quite minimal given, one, the delay in bringing this action of over two years; two, the fact that they continue to recruit and don't seem to have a problem recruiting, as their own complaint demonstrates; and then, three, the fact that we've represented to the Court that we are not going to be going forward with any proceedings involving Compass and Article II, Section 7.  And so, therefore, they won't suffer any prejudice, while the prejudice to REBNY would be much greater.

THE COURT:  All right.  Ms. Solh, any final points?

MS. SOLH:  I don't think so.  I don't want to repeat what I've already said; so no, your Honor.

THE COURT:  I appreciate that.

All right.  Thank you, counsel.  I have considered the arguments in the letter briefing, and today I am going to grant the request to stay discovery pending the motion to dismiss. I'm not prejudging the motion in any way.  If it were to prevail, it would be fully dispositive.

Discovery being sought is not insignificant, in light

1   of the timeframe and given the nature of the organization, as
2   well as REBNY's agreement to stay any additional Article II,
3   Section 7 proceedings vis-a-vis Compass in the interim of final
4   resolution of this dispute.
5            And lastly, given that the motion to dismiss is filed,
6   opposition is due in short order, it will be fully briefed
7   within a month.  And I wish I could say I'll turn to it as soon
8   as it comes in.  It will go in the queue, but I will certainly
9   get you resolution as quickly as I can, in light of the Court's
10  docket.
11           If we do get past the motion to dismiss with any
12  remaining claims, I do intend to put you on the agreed-upon
13  discovery schedule.  We'll stick to it.  So certainly the
14  defendant should be -- both sides, but the defendant should be
15  taking measures to ensure that if the case does survive the
16  motion, that we'll proceed expeditiously on the schedule the
17  parties propose.
18           Ms. Solh, is there anything else I can address at this
19  time?
20           MS. SOLH:  No.  Thank you, your Honor.
21           THE COURT:  Mr. Szyfer?
22           MR. SZYFER:  No.  Thank you, your Honor.
23           And again, apologies about the speaking over you
24  before.  Just, I'm on headphones that weren't all that clear;
25  so apologies for that.

```
                                                                    18
L6PPCOMC
```

L6PPCOMC

1       THE COURT:  I appreciate that.  It's the nature of

2  phone proceedings, which have their advantages and their

3  disadvantages.  So no additional apology necessary.  Thank you.

4       MR. SZYFER:  All right.  Thank you.

5       THE COURT:  All right.  Counsel, we are adjourned.

6       MS. SOLH:  Thank you.

7       MR. SZYFER:  Thank you.

8       (Adjourned)