IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMPASS, INC. and COMPASS RE NY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> REAL ESTATE BOARD OF NEW YORK, INC., <br><br> Defendant. | Civil Action 1:21-cv-2195-LGS |

**PLAINTIFFS COMPASS, INC. AND COMPASS RE NY, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT REAL ESTATE BOARD OF NEW YORK, INC.'S MOTION FOR PARTIAL RECONSIDERATION OR REARGUMENT UNDER LOCAL CIVIL RULE 6.3**

**TABLE OF CONTENTS**

Page

I. BACKGROUND ........................................................................................................... 1

II. LEGAL STANDARD .................................................................................................... 3

III. ARGUMENT .................................................................................................................. 3

    A.     The Court Did Not Overlook Binding Case Law Or Allegations In Deciding That Compass Had Properly Pleaded A Relevant Market. .................... 4

        1.     Compass Did Not Allege a Product Market Defined by Its Preferences. ................................................................................................ 5

        2.     Cases REBNY Alleges the Court Overlooked Bolster the Court's Holdings. .................................................................................................. 6

    B.     The Court Did Not Overlook Binding Case Law Or Allegations In Deciding That Compass Had Properly Pleaded Antitrust Injury. .......................... 7

        1.     Compass Did Not Allege or Argue that Lost Revenue was the Only Harm Caused by REBNY's Conduct. .......................................................... 8

        2.     As Explicitly Stated by the Court, REBNY and Its Co-Conspirators' Conduct Went Beyond Mere Exercise of Legal Rights. ....................................................................................................... 9

        3.     Compass's Allegations Demonstrate that REBNY has the Ability to Revoke Compass's Access to the REBNY RLS. ................................ 10

IV. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Balaklaw v. Lovell*,
   14 F.3d 793 (2d Cir. 1994) ..................................................................................................7

*City of N.Y. v. Group Health, Inc.*,
   649 F.3d 151 (2d Cir. 2011) ...............................................................................................5, 6

*DNAML Pty, Ltd. v. Apple, Inc.*,
   25 F. Supp. 3d 422 (S.D.N.Y. 2014) .....................................................................................8

*Ferrand v. Credit Lyonnais*,
   292 F. Supp. 2d 518 (S.D.N.Y. 2003) ..............................................................................3, 10

*Gatt Communications, Inc. v. PMC Associates, L.L.C.*,
   711 F.3d 68 (2d Cir. 2013) ................................................................................................8, 9

*Meijer, Inc. v. Ferring B.V.*,
   585 F.3d 677 (2d Cir. 2009) ..................................................................................................9

*Montanile v. Nat'l Broad. Co.*,
   216 F. Supp. 2d 341 (S.D.N.Y. 2002) ................................................................................3, 4

*Sikhs for Justice v. Nath*,
   893 F. Supp. 2d 598 (S.D.N.Y. 2012) ...................................................................................3

*Warren v. City of New York*,
   No. 08-CV-3815, 2010 U.S. Dist. LEXIS 49669 (E.D.N.Y. May 19, 2010) .....................3, 4

**Statutes**

Donnelly Act ..................................................................................................................................2

Sherman Act ..................................................................................................................................2

Plaintiffs Compass, Inc. and Compass RE NY, LLC (collectively, "Plaintiffs" or "Compass") respectfully submit this response in opposition to Defendant Real Estate Board of New York, Inc.'s ("Defendant" or "REBNY") Motion for Partial Reconsideration or Reargument, ECF 36 ("Motion for Reconsideration"). The Motion for Reconsideration challenges the Court's March 31, 2022 Opinion & Order, ECF 32 ("Motion to Dismiss Order"), which denied REBNY's motion to dismiss Compass's antitrust claims. Despite the thoroughness of the Court's twenty-three-page order, REBNY now argues that the Court overlooked binding case law and allegations regarding the relevant market and antitrust injury. However, REBNY's real issue is that the Court did not adopt its positions and that the Court did not specifically cite or discuss cases that REBNY wanted it to discuss. REBNY's arguments are thus merely restatements of the arguments made in its motion to dismiss briefing which the Court has already rejected. Rather than advancing legitimate reconsideration arguments, REBNY instead seems to be trying to get a second bite at the apple simply because the case was reassigned from Judge Nathan to Judge Schofield. REBNY's Motion for Reconsideration should be denied.

## I.   BACKGROUND

Compass is a young, technology-focused real estate brokerage. ECF 1 ¶¶ 12-13. On March 12, 2021, Compass filed a complaint against REBNY alleging that REBNY had conspired with two dominant brokerages, NRT New York LLC d/b/a The Corcoran Group ("Corcoran") and Douglas Elliman LLC ("Elliman") to prevent Compass from competing in the New York Residential Real Estate Brokerage Market, most importantly through the adoption, revision, and selective enforcement of Article II, Section 7 of the REBNY Universal Co-Brokerage Agreement. *See generally id*. On May 18, 2021, REBNY moved to dismiss Compass's Complaint, arguing, among other things, that Compass had failed to allege a cognizable product market and that Compass had failed to allege a proper antitrust injury, ECF 14 at 13, 16-17—the

exact two issues that REBNY repeats in its Motion for Reconsideration, *see* ECF 37 at 1.  On July 2, 2021, Compass filed its opposition to REBNY's Motion to Dismiss, *see* ECF 25, and on July 30, 2021, REBNY filed its Reply in support of its Motion to Dismiss, *see* ECF 29.

On March 31, 2022, this Court issued its twenty-three-page Motion to Dismiss Order denying REBNY's motion to dismiss Compass's antitrust claims but dismissing Compass's tortious interference claim.  ECF 32 at 22.  In the Motion to Dismiss Order, the Court comprehensively discussed the elements required to plead Sherman Act and Donnelly Act claims.  *Id.* at 9.  The Court spent a significant portion of its order discussing Compass's alleged relevant market.  *Id.* at 9-11.  The Court stated that "there is no ambiguity as to the market Compass defines: the New York Residential Real Estate Brokerage Market."  *Id.* at 9, 21.  The Court then found that "Compass's proposed market . . . plausibly encompasses all interchangeable substitute products" and listed the factors that Compass alleged make the relevant market a proper market.  *Id.* at 10-11.  The Court also specifically noted that "REBNY recasts the market alleged in the complaint" and rejected the attempted recasting.  *See id.* at 9-11.

Similarly, the Court spent a significant portion of its Motion to Dismiss Order explaining why Compass had properly pleaded that REBNY's conduct had caused antitrust injury to competition as a whole.  *See id.* at 11-18.  Citing to Second Circuit law, the Court explained that Compass had properly alleged harm to competition market-wide "because Compass pled (1) market power and (2) at least one other ground for believing the challenged restraint harms competition."  *Id.* at 13.  The Court then stated in detail why Compass met these two elements.  *Id.* at 14.  The Court also considered and specifically rejected REBNY's claims that its and its co-conspirators' behavior was merely an exercise of their legal rights.  *Id.* at 16-17.

Despite the comprehensiveness of the Court's Motion to Dismiss Order, and after the case was reassigned from Judge Nathan to Judge Schofield, on April 14, 2022, REBNY filed its

Motion for Reconsideration.  ECF 36.

## II.     LEGAL STANDARD

Reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly," *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002) (internal quotations and citation omitted), and "the standard of review applicable to such a motion is 'strict,'" *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012) (internal citation omitted).  Reconsideration "is not intended as a vehicle for a party dissatisfied with the Court's ruling . . . to secure a rehearing on the merits with regard to issues already decided." *Montanile*, 216 F. Supp. 2d at 342.  Where a movant claims that the court overlooked controlling decisions or material facts, the movant has the burden to show that the court did so and that those decisions or facts would have "materially" influenced the court's decision.  *See Sikhs for Justice*, 893 F. Supp. 2d. at 605.  Further, the fact that a court did not specifically mention a case or fact in its opinion does not mean that it overlooked the case or fact or that such case or fact is material.  *See Ferrand v. Credit Lyonnais*, 292 F. Supp. 2d 518, 521-22 (S.D.N.Y. 2003) (stating "that the Court did not specifically reference every factual detail or incident . . . does not necessarily establish that the Court did not consider that particular matter . . . "); *see also Warren v. City of New York*, No. 08-CV-3815, 2010 U.S. Dist. LEXIS 49669, at *3 (E.D.N.Y. May 19, 2010) (stating that "the failure to specifically discuss each of the cases cited in defendants' initial opposition does not mean that the Court failed to consider those decisions.").

## III.     ARGUMENT

In support of its Motion for Reconsideration, REBNY does not raise any intervening law or new evidence (as there is none).  Rather, REBNY argues that the Court "clearly erred" by "overlook[ing] binding case law and Compass's own allegations," specifically with regard to Compass's relevant market definition and antitrust injury.  ECF 37 at 1.  However, REBNY does

3

not demonstrate that the Court overlooked controlling decisions or material allegations—rather, REBNY's issue seems to be that the Court did not adopt *its* positions or specifically cite to *its* preferred case law or allegations. On this ground alone, REBNY's motion should be denied. *See Montanile*, 216 F. Supp. 2d at 342 (stating that reconsideration "is not intended as a vehicle for a party . . . to secure a rehearing on the merits with regard to issues already decided"); *see also Warren*, 2010 U.S. Dist. LEXIS 49669, at *3 (stating that "the failure to specifically discuss each of the cases . . . does not mean that the Court failed to consider those decisions"). REBNY is also incorrect on the merits that any of the case law or allegations it cites to are inconsistent with the Court's Motion to Dismiss Order. As with its original Motion to Dismiss, REBNY continues to put forward arguments that involve misreading of or cites to irrelevant case law and the cherry-picking and miscasting of Compass's allegations in a way wholly inconsistent with Compass's actual pleadings and the standards at the pleading stage.

**A.    The Court Did Not Overlook Binding Case Law Or Allegations In Deciding That Compass Had Properly Pleaded A Relevant Market.**

In its Motion to Dismiss, REBNY tried a two-step tactic (and failed): first, REBNY tried to invent a relevant market wholly different from Compass's alleged relevant market, *see* ECF 14 at 8 (stating that "Plaintiffs' purported market is . . . defined by Plaintiffs' own preferences to recruit "well-known" or "top" real estate agents affiliated with Corcoran or Elliman"), and second, REBNY attacked its invented market as being improper, *see id.* (stating that "Compass, however, fails to allege any facts showing that this subset of Corcoran and Elliman agents actually constitutes a distinct product market"). However, in its order, the Court explicitly rejected REBNY's tactic. First, the Court recognized that REBNY had tried to "recast[] the market alleged in the complaint," but found "there is no ambiguity as to the market Compass defines: the New York Residential Real Estate Brokerage Market." ECF 32 at 9. The Court then rejected REBNY's argument that a market consisting of top real estate agents is not legally

4

cognizable, stating that "[w]hile REBNY may (and likely will) assert an alternative theory of the relevant market during the course of litigation, in order to prevail on its motion to dismiss, REBNY must articulate why *Compass's theory* is inadequate to survive dismissal," and citing case law to that effect. *Id.* at 11. The Court also explained why Compass's actual alleged market is cognizable, listing the facts Compass had pleaded regarding interchangeable substitutes. *Id.* at 10-11. The Court further pointed out that Compass's market definition "is consistent with those recognized in similar antitrust actions against MLSs . . . and those credited in actions against private standard-setting organizations." *Id.* at 11.

In its Motion for Reconsideration, REBNY repeats the exact same tactic the Court already rejected. REBNY again tries to transform Compass's clearly pleaded market into one that Compass did not plead, then attacks this new, invented market as one that is not cognizable. *See* ECF 37 at 3 (stating that "Compass's Complaint is replete with allegations detailing a product market for 'top agents' affiliated with Corcoran and Elliman . . . . Under *Group Health*, however, Compass's preference to hire 'top agents' from Corcoran and Elliman cannot create a cognizable market . . ."). The Court should reject REBNY's attempt to reargue the same issue, as doing so is improper in a motion for reconsideration. And, even assuming REBNY's argument was proper, the Court should reject REBNY's arguments on the merits for the same reasons the Court rejected those arguments in the first place.

    **1.**    **Compass Did Not Allege a Product Market Defined by Its Preferences.**

As the Court recognized, Compass alleged that "[t]he key relevant market being harmed by REBNY and its co-conspirators' conduct is the New York Residential Real Estate Brokerage Market," defined as "the market for residential real estate brokerage services in New York City, particularly Manhattan and closely-neighboring parts of Brooklyn and Queens." ECF 32 at 9-10; ECF 1 ¶ 33. Compass's complaint continues on for seventeen more paragraphs explaining why

5

the New York Residential Real Estate Brokerage Market is the relevant market as well as the parties' roles in that market.  ECF 1 ¶¶ 33-39.  REBNY tries to wave away these substantive allegations (including other parts of the complaint referencing this clearly defined market) by pointing to a handful of references Compass made to wanting to recruit top agents, including references that were simply describing specific agents as top agents.  *See* ECF 14 at 8 (pointing to ¶¶ 75-79 and 88-94 of the Complaint as evidence that Compass had defined its relevant market as "well-known" or "top" real estate agents affiliated with Corcoran and Elliman, even though those paragraphs of the Complaint were simply describing specific agents).  REBNY cannot simply cherry-pick a handful of specific allegations to try to undermine what the Court called a market defined with "no ambiguity."  ECF 32 at 9.

        **2.**      **Cases REBNY Alleges the Court Overlooked Bolster the Court's Holdings.**

Further, in trying to claim that Compass alleged a market for top agents rather than the market it actually alleged, REBNY tries to claim that the Court erroneously overlooked *City of N.Y. v. Group Health, Inc.*, 649 F.3d 151, 155 (2d Cir. 2011), even though *Group Health* was a merger case and the ruling was issued at the summary judgment stage.  *See* ECF 37 at 3-4.  However, *Group Health* actually *bolsters* the Court's holding, and thus the Court likely considered the case rather than overlooked it.  REBNY is correct that *Group Health* stands for the proposition that an antitrust product market cannot be "defined by [a plaintiff's] preferences," but it also stands for the proposition that an antitrust product market should be instead defined "according to the rule of reasonable interchangeability and cross-elasticity of demand."  649 F.3d at 156.  As the Court recognized in its order, that is exactly what Compass did—Compass pleaded a relevant market that "plausibly encompasses all interchangeable substitute products."  ECF 32 at 10.  The Court even went so far as to list out the specific allegations Compass had alleged demonstrating why the alleged market encompasses all interchangeable substitute

6

products. *See id*. at 10-11 (pointing to Compass's allegations that the New York Residential Brokerage Services Market is unique, not replaceable by owners, and not serviceable by brokerages outside of the region). Compass has thus followed *Group Health*'s holding exactly—rather than alleging a market defined by what Compass or a particular consumer wants, Compass has alleged a market that includes all interchangeable substitutes.

REBNY also tries to claim in its Motion for Reconsideration that the Court overlooked *Balaklaw v. Lovell*, 14 F.3d 793 (2d Cir. 1994), a case that REBNY raised once in passing in its Reply brief. *See* ECF 29 at 2. REBNY claims that "*Balaklaw* demonstrates that the relevant market at issue in Compass's Complaint is the buy-side market for agent services" and therefore, Compass's alleged sell-side market for brokerage services is improper. *See* ECF 37 at 8-9. But this is simply an inaccurate description of the holding in *Balaklaw*. The court in *Balaklaw* analyzed the potential harm that the alleged anticompetitive conduct could have caused on *both* the buy-side and the sell-side markets and treated *both* as relevant markets. *See Balaklaw*, 14 F.3d at 798-99 (stating that "[t]he relevant markets even arguably affected . . . are (1) the consumers of anesthesiology services, and (2) the providers of anesthesiology services," and ultimately finding that there was no foreclosure of competition "in either of the two relevant markets"). Thus, *Balaklaw* in fact *supports* the Court's holding that Compass's sell-side market is an appropriate market, and the Court likely considered the case.

In short, the Court neither overlooked any material allegations nor case law that is inconsistent with its holding on the relevant market. Rather, the Court correctly found Compass had alleged a cognizable relevant market, the New York Residential Real Estate Brokerage Market, and included specific allegations demonstrating the relevant market was appropriate.

B.  **The Court Did Not Overlook Binding Case Law Or Allegations In Deciding That Compass Had Properly Pleaded Antitrust Injury.**

In its Motion to Dismiss Order, the Court spent nearly seven pages explaining why

7

Compass had "plausibly shown, by indirect proof, that the coordinated adoption, revision, and selective enforcement of Article II, Section 7 by REBNY adversely affects competition market-wide" rather than merely harming an individual competitor like Compass. *See* ECF 32 at 11-18. Despite this extensive discussion by the Court, in its Motion for Reconsideration, REBNY tries to reargue the same points that the Court already rejected.

### 1. Compass Did Not Allege or Argue that Lost Revenue was the Only Harm Caused by REBNY's Conduct.

First, REBNY claims that the Court ignored *Gatt Communications, Inc. v. PMC Associates, L.L.C.*, 711 F.3d 68, 77 (2d Cir. 2013) and allegations which show that Compass's only harm to the market was "lost revenue," which REBNY claims is not an appropriate antitrust injury. ECF 37 at 7. However, this is an incorrect characterization of both *Gatt* and the Court's opinion. First, as the Court recognized, lost revenue was *not* the sole specific harm that Compass alleged was affecting the entire market. ECF 32 at 14. Rather, the Court found that the impeding of consumer choice was the harm to the market, *id.*, and as Compass has alleged, its lost revenue and harms are directly tied to REBNY and its co-conspirators' efforts to impede consumer choice and decrease innovation. ECF 1 ¶¶ 106-07. REBNY's own motion recognizes that "the Court credited Compass's allegations that Article II, Section 7 'impede[s] consumer choice by preventing property owners from selecting their preferred agents.'" ECF 37 at 7.

Second, REBNY misreads and mischaracterizes *Gatt*. REBNY seems to be suggesting that because Compass suffered injury in the form of lost revenue and is a competitor, Compass cannot sue for antitrust violations. *See id.* However, REBNY's interpretation of *Gatt* has been expressly rejected by other courts in the Southern District of New York. *See DNAML Pty, Ltd. v. Apple, Inc.*, 25 F. Supp. 3d 422, 429 (S.D.N.Y. 2014) (stating that "*Gatt* does not stand for the broad proposition that a distributor's lost profits from a manufacturer's price-fixing conspiracy do not constitute antitrust injury . . . . A claim for lost profits can constitute a cognizable antitrust

8

injury in the appropriate case."); *see also Meijer, Inc. v. Ferring B.V.*, 585 F.3d 677, 689 (2d Cir. 2009) (superseded by statute on other grounds) (recognizing that "defendants' competitors . . . would be seeking lost profits" and that "lost profits and overcharges are distinct injuries"). Rather, *Gatt* stands for the proposition that a plaintiff can only sue for harms caused by anticompetitive schemes—not for harms that were caused by the plaintiff's ability or inability to participate in the anticompetitive schemes. *Gatt*, 711 F.3d at 77 (stating that "[e]ven if the antitrust laws seek to prevent [defendants'] alleged activities because of resulting harms to *competition*, these laws not concerned with injuries to *competitors* such as Gatt *resulting from their participation in or exile from such schemes*") (emphasis added).

### 2. As Explicitly Stated by the Court, REBNY and Its Co-Conspirators' Conduct Went Beyond Mere Exercise of Legal Rights.

REBNY then claims that the Court overlooked material allegations and cases and incorrectly concluded that the complained-of conduct is more than the mere exercise of REBNY's and its co-conspirators' legal rights. ECF 37 at 10. This is a naked restatement of REBNY's argument in its original briefing that the conduct was merely the exercising of exclusive contractual rights. *See* ECF 14 at 12-16. The Court specifically rejected this argument, ECF 32 at 15-17, and explained that "Article II, Section 7 has at least four anticompetitive features that go beyond rights of exclusivity with their clients that Corcoran and Douglas Elliman have as a matter of contract," *id.* at 16. REBNY's only engagement in its Motion for Reconsideration with these anticompetitive features is to grossly mischaracterize how they are alleged and how the Court described them, and conclude that "[n]one of these features demonstrate legally cognizable antitrust injury." ECF 37 at 10. REBNY's argument is a far cry from the strict standard needed for a motion for reconsideration.

Further, the case law that REBNY suggests that the Court overlooked is all related to the legality and definitions of exclusive contracts, *see* ECF 37 at 8-10 (citing *Indeck Energy Servs.,*

9

*Inc. v. Consumers Energy Co.*, 250 F.3d 972, 978 (6th Cir. 2000); *In re Sherlock Homes*, 246 B.R. 19, 23 (Bankr. W.D.N.Y. 2000); and *ECC v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 245 (2d Cir. 1997))—cases which are only persuasive authority or irrelevant, ECF 32 at 17 (stating that "[i]n other words, it is not the exclusive contracts themselves that create the cognizable harm, but rather the overlay of Article II, Section 7 and how it enhances the former brokerage's rights and leverage at the expense of other brokerages and consumers"). REBNY has thus put forward no meaningful argument or evidence that the Court erred in finding that its conduct had gone beyond mere exercising of legal rights.

### 3. Compass's Allegations Demonstrate that REBNY has the Ability to Revoke Compass's Access to the REBNY RLS.

Finally, REBNY incorrectly argues that "the Court further erred by relying on the possibility that Compass could be 'cut . . . off from the REBNY RLS' in finding that Compass alleged antitrust injury" because the Court ignored Compass's statements that Compass had not yet been cut off from the RLS and that no other brokerage had been suspended by the RLS. ECF 37 at 10. However, the fact that Compass has not yet been cut off from the RLS and no other brokerage has yet been suspended by the RLS is irrelevant to whether REBNY has the ability to do so. Compass alleged numerous times that REBNY has the ability to do so, has threatened to do so, and has even been accused by others of wielding its control over the RLS to harm competitors. ECF 1 ¶¶ 41, 55, 60, 94, 95, 99, 101, 119-20. The fact that the Court did not discuss the history of REBNY's control over the RLS is thus unimportant. *See Ferrand*, 292 F. Supp. 2d at 521-22 (stating "[t]hat the Court did not refer to the matter in the first instance is precisely an indicator that that detail was not particularly worth of mention").

## IV. CONCLUSION

For the foregoing reasons, the Court should deny REBNY's Motion for Reconsideration. However, if the motion is granted, Compass requests the opportunity to amend the Complaint.

10

Dated:  April 28, 2022                                    Respectfully submitted,


                                                          */s/ Chahira Solh*
                                                          Chahira Solh (*pro hac vice*)
                                                          CROWELL & MORING LLP
                                                          3 Park Plaza, 20th Floor
                                                          Irvine, CA 92614
                                                          (949) 263-8400
                                                          csolh@crowell.com

                                                          Glen G. McGorty
                                                          CROWELL & MORING LLP
                                                          590 Madison Ave, 20th Floor
                                                          New York, NY 10022
                                                          (212) 223-4000
                                                          gmcgorty@crowell.com

                                                          Diane Shrewsbury (*pro hac vice*)
                                                          CROWELL & MORING LLP
                                                          1001 Pennsylvania Ave NW
                                                          Washington, DC 20004
                                                          (202) 624-2500
                                                          dshrewsbury@crowell.com

                                                          *Attorneys for Plaintiffs*
                                                          *Compass, Inc. and Compass RE NY, LLC*

## CERTIFICATE OF SERVICE

      I certify that on April 28, 2022, a true and correct copy of the foregoing was filed with the Court's electronic case filing (ECF) system, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.

                                                  */s/ Chahira Solh*
                                                  Chahira Solh (*pro hac vice*)