UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
COMPASS, INC., et al., :
                            Plaintiffs, :
                                      :    21 Civ. 2195 (LGS)
            -against- :
REAL ESTATE BOARD OF NEW YORK, INC., :    ORDER
et al., :
                          Defendants. :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

      WHEREAS, on March 31, 2022, then District Court Judge Alison J. Nathan issued an Opinion and Order (the "Opinion") granting in part and denying in part Defendants' motion to dismiss.

      WHEREAS, the Opinion dismissed the tortious interference with prospective economic advantage claim and found that the Complaint sufficiently alleges antitrust violations under the Sherman Act and the Donnelley Act.

      WHEREAS, the case was reassigned to the undersigned from Judge Nathan.

      WHEREAS, on April 14, 2022, Defendants timely filed a motion for reconsideration of the decision to allow the antitrust claims to proceed.

      WHEREAS, a motion for reconsideration should be granted "only when the [party seeking reconsideration] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (internal citation omitted). The standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* (internal citation omitted). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the

case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted); *Dill v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 10947, 2021 WL 3406192, at *11 (S.D.N.Y. Aug. 4, 2021). The decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (internal quotation marks omitted); *Strougo v. Barclays PLC*, 334 F. Supp. 3d 591, 595 (S.D.N.Y. 2018).

WHEREAS, in a situation like the one here, where a newly assigned judge is being asked to reconsider the ruling of another judge, the court must be especially wary of attempts to relitigate the same issues before a new audience. *See Murray v. Dutcavich*, No. 17 Civ. 9121, 2020 WL 3318212, at *1 (S.D.N.Y. June 18, 2020); *Jones v. Goodrich Corp.*, No. 12 Civ. 1297, 2020 WL 4558967, at *2 (D. Conn. Aug. 7, 2020) ("[R]econsideration is particularly improper where the moving party attempt[s] to relitigate before a newly assigned judge any arguments rejected or ruled irrelevant by the prior judge." (cleaned up)); *Waverly Props. LLC v. KMG Waverly*, No. 09 Civ. 3940, 2011 WL 13322667, at *1 (S.D.N.Y. Dec. 19, 2011); *Peyser v. Searle Blatt & Co., Ltd.*, No. 99 Civ. 10785, 2004 WL 307300, at *1 (S.D.N.Y. Feb. 17, 2004) ("[T]he [reassigned] judge is well advised to pay particular heed to the doctrine of 'law of the case,' and not to attempt a *de novo* review of all of the many orders and decisions made over a lengthy period by diligent and experienced judicial officers who have handled the case previously.").

WHEREAS, proceeding under a theory that the Opinion committed clear error, Defendants re-argue that Plaintiff failed to plead a relevant product market. Defendants maintain that the Complaint alleges only anticompetitive effects to the "buy-side" market for agents and

that under *City of New York v. Group Health, Inc.*, 649 F.3d 151, 155 (2d Cir. 2011), Plaintiff Compass's "preference to hire 'top agents' from [Defendants] cannot create a cognizable market." Defendants also contend for the second time that the Complaint has not alleged cognizable injury to Plaintiff. The Opinion considered and rejected these arguments. Defendants offer no intervening change in law. The Opinion did not overlook any controlling caselaw. A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Tonga Partners*, 684 F.3d at 52. The motion for reconsideration is denied as a rehash of the original motion to dismiss.

WHEREAS, in any event, both arguments fail on the merits. First, the Complaint sufficiently alleges harm in the relevant market of "New York Residential Brokerage Services," i.e., companies that provide brokerage services, like Compass, Corcoran or Douglas Elliman. These companies compete with each other in two ways -- first, to secure licensed real estate agents to conduct their brokerage business (the buy-side market) and second, to attract customers who wish to buy and sell real property (the sell-side market). The market as pleaded is sufficient.

WHEREAS, Defendants assert that the alleged market cannot be defined by Plaintiff's preferences and seize on the Complaint's allegation that Defendants conspired "to impede competition between brokerages for the services of top agents and deprive consumers of the option of retaining their preferred real estate agent" by requiring that the listing stay with the prior brokerage when an agent changes firms. This argument misconstrues the Complaint and its use of the term "top agents." Reading the Complaint in context, it alleges a scheme akin to a hypothetical scheme to impede competition between law firms for the services of "top lawyers"

3

by requiring them to leave their clients at their prior law firm when they change firms. The market is law firms. Under the buy-side theory, the "product" they are competing for is lawyers. They are hoping to recruit lawyers whom they view as the best or "top" lawyers. Similarly in the Complaint, the market is brokerage firms. The "product" they compete for is real estate agents. The alleged market is not defined by Plaintiff's preferences, as Defendants maintain. The Complaint does not "allege[] a proposed relevant market that clearly does not encompass all interchangeable substitute products." *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 155 (2d Cir. 2011).

WHEREAS, Defendants' reliance on *Balaklaw v. Lovell*, 14 F.3d 793 (2d Cir. 1994), is mistaken. There, the Court identified two relevant markets affected by an exclusive contract between a hospital and a group of anesthesiologists, namely (1) the market of consumers of anesthesiology services and (2) the anesthesiologists who compete for jobs. Contrary to Defendants' argument, the case does not demonstrate that the relevant market here consists only of "the buy-side market for [real estate] agent services," inasmuch as the court in *Balaklaw* found two markets affected by the allegedly anticompetitive conduct. Even if the case did stand for that proposition, that buy-side market for agent services is exactly the market alleged in the Complaint and properly found to be sufficiently pleaded.

WHEREAS, Defendants' second argument also fails. Defendants reargue that the Complaint does not plead the requisite antitrust injury. This argument is incorrect. "[A] three-part test . . . determine[s] whether the plaintiff has alleged an antitrust injury: (1) the court must identify the practice complained of and the reasons such a practice is or might be anticompetitive; (2) the court must identify the actual injury the plaintiff alleges, which requires us to look to the ways in which the plaintiff claims it is in a worse position as a consequence of

the defendant's conduct; and (3) the court compares the anticompetitive effect of the specific practice at issue' to the actual injury the plaintiff alleges." *IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 63 (2d Cir. 2019) (quoting *Gatt Comm., Inc. v. PMC Assocs., LLC*, 711 F.3d 68, 76 (2d Cir. 2013)) (cleaned up).

WHEREAS, here, the Complaint alleges that Defendants "impede[d] competition between brokerages for the services of top agents and deprived consumers of the option of retaining their preferred real estate agent."  The Complaint alleges that Defendants, who have market power, caused this harm by conspiring to "pass[], chang[e], and selectively enforce[]" Article II, Section 7.  Other alleged harms to competition include denying brokers like Compass a "key input" for their business, impeding market entry and adversely affecting consumer choice, among other things.  Once Plaintiff was in the market of brokerage firms "it had a right to do business in a market undistorted by unlawful anticompetitive conduct." *IQ Dental Supply, Inc.*, 924 F.3d at 64; *see Brunswick*, 429 U.S. at 489 (to show antitrust injury plaintiffs must show their injury is "of the type the antitrust laws were intended to prevent").  Plaintiff's alleged injury is the same as the anticompetitive effect of the challenged conduct -- that is, stifling competition among brokers by impeding their ability to recruit agents to conduct their brokerage business.

WHEREAS, Defendants' argument that exclusive distributorship arrangements are presumptively legal is inapplicable here.  The presumption applies to *distributorship* arrangements on the theory that substituting one exclusive distributor for another usually does not harm competition.  *See E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 30 (2d Cir. 2006) ("[I]t usually does not further harm competition for a monopolist in one market to leverage its advantage into a monopoly in a downstream market."); *Elecs. Commc'n Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 245 (2d Cir. 1997) ("In the absence of price-

5

fixing, agreements to terminate distributors, even at the behest of competing distributors who seek to maintain exclusive distribution rights, have repeatedly been sanctioned by the courts."). That circumstance does not apply here where the exclusive contract is not a distributorship contract, but rather between the home seller and the brokerage firm, and the Opinion found that the Complaint raised "at least four anticompetitive features that go beyond rights of exclusivity." Nor has the Second Circuit "held that all exclusive arrangements are reasonable as a matter of law." *E & L Consulting, Ltd.*, 472 F.3d at 30.

  WHEREAS, that the anticompetitive effect of Defendants' alleged conduct -- impeding Plaintiff from recruiting agents to conduct its business -- will ultimately result in a loss of revenue is not disqualifying. Most harms to a business, including anticompetitive harms, will ultimately result in a loss of revenue. Defendants' reliance on *Gatt v. PMC Assocs.*, 711 F.3d 68 (2d Cir. 2013), is misplaced. The Second Circuit's holding in *Gatt* does not stand for the proposition that "lost revenue" is never an antitrust injury. Rather, *Gatt* held that where the unlawful antitrust act was big-rigging, the "lost revenue" from the termination of a contract was not an injury that "flow[ed] from that which makes the big-rigging unlawful." *Id*. at 77. Here, the Complaint sufficiently alleges that the lost revenue flows directly from the alleged anticompetitive conduct of "coordinated adoption, revision, and selective enforcement of Article II, Section 7 by REBNY," and Plaintiff's resulting inability to recruit agents.[1] It is hereby

  **ORDERED** that, for the foregoing reasons, Defendants' motion for reconsideration is **DENIED**.

---

[1] The Court has considered Defendants' remaining arguments and finds them repetitive of the arguments raised in the underlying motion to dismiss and in any event unpersuasive.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 36.

Dated: July 27, 2022
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**