

By CM/ECF

December 16, 2022

The Honorable Lorna G. Schofield
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1106
New York, New York 10007

Re:   *Compass, Inc. v. Real Estate Board of New York, Inc.* – Case No. 1:21-CV-02195- LGS

Dear Judge Schofield:

REBNY submits this response to Compass's letter requesting a pre-motion conference on its motion to voluntarily dismiss this action without prejudice.  ECF 89.  REBNY agrees that this action should be dismissed and advised Compass of this fact.  However, REBNY respectfully requests that the Court exercise its broad discretion by imposing conditions on any dismissal by making the dismissal with prejudice and/or by awarding REBNY its reasonable attorney fees and costs associated with defending this baseless action.

Compass's Complaint alleged that REBNY, a not-for-profit trade association, and just two of its over 500 brokerage members (Corcoran and Elliman) engaged in an antitrust conspiracy to harm Compass by adopting a trade association rule in 2018 (Article II, Section 7 (the "Rule")), amending the Rule in 2019, and selectively enforcing the Rule against Compass.  ECF 1, ¶¶ 6-8, 62-69, 80-84.  Consistent with New York regulations governing licensed real estate brokers and salespeople, the Rule prohibits real estate agents and their new brokerage firms from initiating communications with property owners if the property owners are parties to existing exclusive listing agreements with another brokerage firm.  *Id.* ¶¶ 62, 80.  Compass, however, does not claim any harm flowing from an inability to initiate communications with owners.  Instead, Compass claims it has been harmed because Corcoran and Elliman refused to release their exclusive listings when former Corcoran or Elliman agents joined Compass.  *Id.* ¶¶ 66, 103.  The exclusive listings are contractual, bargained-for rights that *belong to Corcoran and Elliman* under New York law.

In its letter, Compass now states, without elaboration, that its request for a dismissal is "due to procompetitive changes within the market regarding approaches to agent mobility and referral of listings."  ECF 89 at 1.  REBNY has long insisted that any so-called "harm" Compass suffered in its efforts to recruit agents was caused by Corcoran and Elliman's "unilateral decisions" to release (or not release) their exclusive listings when their former agents joined Compass.  ECF 14 at 6; *see also* ECF 29 at 4; ECF 37 at 7-8.  Compass's request to voluntarily dismiss has proven REBNY correct.  The Rule has not changed since 2019—not one word.  Accordingly, no conduct on the part of REBNY nor any amendment to the Rule can explain the "procompetitive changes" to the market Compass relies on to support dismissal.  Corcoran and Elliman were always free to engage in so-called "procompetitive behavior" notwithstanding anything contained in the Rule.  And the Rule could not have caused any antitrust injury to Compass or the market.

STROOCK & STROOCK & LAVAN LLP  Los Angeles • New York • Miami • Washington, DC
2029 Century Park East – 18th Fl, Los Angeles, CA 90067-3086 • T. 310.556.5800 • F. 310.556.5959 • www.stroock.com

Because Compass has not explained what it means by "procompetitive changes," REBNY can only guess what those changes are based on the conduct underlying Compass's allegations. But, in addition to the fact that "procompetitive changes" have purportedly occurred without any amendment to the Rule, several other facts about this case demonstrate that a without prejudice dismissal is inappropriate. *See Farmer v. Indyke*, 19 Civ. 10475 (LGS), 2021 WL 516865, at *2 (Feb. 10, 2021) (without prejudice dismissals are "subject to substantial scrutiny") (Schofield, J.).[1]

First, documentary evidence, unavailable to REBNY on its prior motions but clearly within Compass's possession when it filed its Complaint, raises serious questions about the veracity of Compass's allegations and whether Compass had a good faith basis for filing the Complaint. Most notably, Compass alleged that the version of the Rule adopted in 2018 was part of "a campaign spearheaded by Corcoran and Douglas Elliman and in conjunction with REBNY as an independent entity" designed "to impede competition, particularly from Compass." ECF 1, ¶¶ 62-63. In reality, the 2018 version of the Rule was approved by REBNY's Residential Brokerage Division Board of Directors (the "Board"). At the time, the Board consisted of representatives from more than 10 brokerage firms, in addition to Corcoran and Elliman. Indeed, Robert Reffkin, *Compass's founder and CEO*, participated in the drafting of the 2018 version of the Rule that Compass now claims is an antitrust conspiracy involving just REBNY, Corcoran, and Elliman. And, shortly before it was enacted, Mr. Reffkin *expressly approved* an earlier, substantially similar draft version of the Rule that was then approved by the full Board. Given Mr. Reffkin's involvement in drafting the Rule *and his own approval of the Rule*, Compass cannot claim in good faith that the Rule's adoption was "spearheaded" by Corcoran and Elliman or designed to impede Compass's growth.

Similarly, with respect to the current version of the Rule (adopted in 2019), Compass relies heavily on "a document titled 'Top 10 Changes to the UCBA for 2019,'" which described the removal of the so-called "client certification clause" contained in the 2018 version of the Rule approved by Mr. Reffkin. ECF 1, ¶ 81. According to Compass, it was "exclu[ded] from the deliberations" surrounding these amendments to the Rule. *Id.* ¶ 86. In reality, Gordon Golub, Compass's Senior Managing Director for Agent Development, had been appointed to the Board before the amendments to the Rule were adopted. Mr. Golub, in fact, received a copy of the "Top 10 Changes to the UCBA for 2019" *before the revisions to the Rule was finalized*. And, instead of timely raising any concerns about the amendments to the Rule described therein, Mr. Golub simply replied: "looks great." Again, under these circumstances, Compass cannot credibly allege that it was blindsided by "the removal of the client certification clause" (*id.* ¶ 81), or that Compass was excluded from the amendment process. Compass not only participated in the amendment process, but its own employee appointed to the Board noted his enthusiastic support of the key amendments *before they were approved by the Board*.[2]

---

[1] Compass first asked REBNY to stipulate to a without prejudice dismissal on November 28, 2022. REBNY promptly replied the next day informing Compass of its position that any dismissal should be with prejudice and that Compass should reimburse REBNY for its reasonable legal fees. REBNY also informed Compass that it was available to discuss the matter further. Compass did not respond for over a week, and then emailed REBNY on December 8, asking it to reconsider a without prejudice dismissal by close of business the same day. That same day, REBNY told Compass that it would not be able to meet Compass's arbitrary, self-imposed deadline. Rather than wait for REBNY's response, Compass filed its letter request the next day.

[2] The amendments to the Rule were approved by the Board at a meeting on January 22, 2019. Mr. Golub attended the

Second, although Compass relies heavily on this case's February 16, 2023 fact discovery deadline to support a without prejudice dismissal, it ignores that discovery—which it admits started nearly 8 months ago—has clearly stalled. Compass has not produced a single page of discovery to REBNY substantiating its claims and, as far as REBNY is aware, neither Corcoran nor Elliman have produced any documents in response to the non-party subpoenas Compass issued. To meet its discovery obligations, Compass has to review *at a minimum* more than 440,000 documents for production by January 16, 2023 (ECF 63 at 2), and, to date, Compass has yet to respond to REBNY's requested modifications to the search terms Compass chose on its own to utilize for its review. ECF 88 at 2. The sheer volume of documents Compass must review in short order raises serious questions as to Compass's motives in seeking a without prejudice dismissal. *See id.* at 1 ("[F]urther extensions of discovery will not be granted absent a showing of extraordinary circumstances and diligence in completing discovery.").

Third, the timing of Compass's request is also suspect. Compass does not identify when Corcoran and Elliman presumably began engaging in "procompetitive behavior" other than to cite a portion of Corcoran's letter to Your Honor noting that Compass had resolved its separate action involving Corcoran via a confidential settlement agreement and that Compass and Corcoran both withdrew all of their pending complaints invoking the Rule against each other. ECF 89 at 1 (citing ECF 77 at 2-3). Assuming that the settlement and withdrawal of the complaints is at least part of the "procompetitive behavior" Compass is relying on, those events occurred no later than October 4, 2022. Rather than promptly seeking a dismissal, Compass waited over two months to file its request. Compass's unexplained delay caused REBNY to incur unnecessary legal fees and costs as it continued to review its own documents for production.[3]

Finally, Compass' own request makes clear that it does not really need a "without prejudice" dismissal. Compass represents to the Court that it "does not presently intend to file another suit," but nevertheless claims that a "dismissal without prejudice would . . . still allow[] Article II, Section 7 to be challenged in the future if the rule is again enforced in a discriminatory manner that directly limits Compass's ability to recruit agents." ECF 89 at 1. Although REBNY maintains that the Rule was never enforced in a discriminatory manner, should Compass feel otherwise in the future, it would be free to bring *new claims* based on *new conduct*. Moreover, as Compass admits, Corcoran has withdrawn the four complaints it filed against Compass pursuant to the Rule.

Compass' request and the facts revealed through the discovery undertaken to date make clear that claims of a vast antitrust conspiracy involving REBNY are devoid of merit. Competitors in the brokerage industry have, *at all times*, remained free to compete as they see fit. And Compass can hardly complain about a rule that it reviewed and approved on two separate occasions. Accordingly, REBNY respectfully submits that dismissal of this action should be with prejudice and/or that Compass should reimburse REBNY's reasonable attorney fees and costs.

---

Board meeting, as did representatives from multiple other brokerage firms in addition to Corcoran and Elliman. Compass waited until *after* that meeting to raise concerns with REBNY.

[3] That *Compass* has previously *invoked the Rule* against Corcoran also raises questions about Compass's motives. Presumably, Compass did not think it was acting anticompetitively when it filed complaints against Corcoran.

Respectfully submitted,

/s/ Claude G. Szyfer

Claude G. Szyfer
Patrick N. Petrocelli
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
cszyfer@stroock.com
ppetrocelli@stroock.com

cc:	All Counsel of Record (via CM/ECF)