IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMPASS, INC. and COMPASS RE NY LLC,<br><br>Plaintiffs,<br><br>v.<br><br>REAL ESTATE BOARD OF NEW YORK, INC.,<br><br>Defendant. | Case No.: 1:21-cv-02195-LGS |

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY SUBPOENA RECIPIENT
DOUGLAS ELLIMAN, LLC'S MOTION FOR ITS REASONABLE ATTORNEY'S FEES
AND COSTS INCURRED IN RESPONDING TO PLAINTIFFS' SUBPOENAS**

**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700

*Attorneys for Non-Party Subpoena Recipient
Douglas Elliman, LLC*

# TABLE OF CONTENTS

|     |     | Page |
| --- | --- | ---: |
| PRELIMINARY STATEMENT | | 1 |
| FACTUAL AND PROCEDURAL BACKGROUND | | 5 |
| ARGUMENT | | 12 |
| A. | Standard of Review | 12 |
| B. | The Court Should Award Elliman its Attorney's Fees Because Compass Failed to Take Reasonable Steps to Avoid Imposing an Undue Burden on Non-Party Elliman | 13 |
| CONCLUSION | | 15 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Breaking Media, Inc. v. Jowers*,
   No. 21 MISC. 194 (KPF), 2021 WL 1299108 (S.D.N.Y. Apr. 7, 2021) ................................. 12

*In re: Mod. Plastics Corp.*,
   890 F.3d 244 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 289 (2018) ............................... 2, 12, 13

*In re Novartis & Par Antitrust Litig.*,
   No. 18 CIV. 4361 (AKH), 2020 WL 3317203 (S.D.N.Y. June 18, 2020) .............. 2, 12, 13, 14

*Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*,
   2006 WL 2996645 (S.D.N.Y. Oct. 13, 2006) ......................................................................... 13

*United States v. Columbia Broad. Sys., Inc.*,
   666 F.2d 364 (9th Cir. 1982) .................................................................................................. 13

**Other Authorities**

Fed. R. Civ. P. 45(d)(1) ............................................................................................................ *passim*

Non-party subpoena recipient Douglas Elliman, LLC ("Elliman"), by its undersigned counsel, respectfully submits this memorandum of law in support of its motion (the "Motion"), pursuant to Federal Rule of Civil Procedure 45(d)(1), for its reasonable attorney's fees and costs incurred in responding to two subpoenas issued by Compass, Inc. and Compass NY RE, LLC (collectively, "Compass" or "Plaintiff"), and in support thereof respectfully represents as follows:[1]

## PRELIMINARY STATEMENT

For many months throughout 2022, non-party subpoena recipient Elliman worked with the utmost good faith to respond to Compass's subpoenas, while avoiding motion practice before this Court. In doing so, Elliman incurred significant legal fees, including in the weeks leading up to Compass's request to voluntarily dismiss this suit, during which Compass knew that Elliman was in the midst of reviewing thousands of documents and preparing a production set. Yet despite that knowledge, Compass never told Elliman to halt its work responding to the subpoenas that Compass then knew were superfluous. Indeed, Compass's voluntary dismissal of its suit—without citing any rule changes by Real Estate Board of New York, Inc. ("REBNY" or "Defendant") or altered behavior by Elliman—is tantamount to a concession that the allegations in its complaint were false, and that all the work Elliman performed as a non-party in this pretense of a lawsuit constitutes an "undue burden and expense" for which Elliman is entitled to compensation. *See* Fed. R. Civ. P. 45(d)(1). ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and

---

[1] In further support of the Motion, Plaintiff submits supporting declaration of Jessica T. Rosenberg ("Rosenberg Decl."), filed contemporaneously herewith.

reasonable attorney's fees—on a party or attorney who fails to comply."). The Court does *not* need to find that Compass acted in bad faith in order to award non-party Elliman its attorney's fees under Rule 45(d)(1). *See In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 289 (2018). "'A non-party required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court.'" *See In re Novartis & Par Antitrust Litig.*, No. 18 CIV. 4361 (AKH), 2020 WL 3317203, at *5 (S.D.N.Y. June 18, 2020) (quoting Fed. R. Civ. P. 45 Application Note).

In March 2021, Compass filed this lawsuit without a scintilla of evidence, in order to damage the reputations of and harass REBNY and two of Compass's biggest competitors, Elliman and NRT New York LLC d/b/a The Corcoran Group ("Corcoran"). In its complaint, Compass named Elliman as a "co-conspirator" and referred to Elliman over 100 times in its complaint, though it did not name Elliman as a defendant, presumably to avoid reciprocal discovery. *See* ECF No. 1. The purported basis of Compass's suit was the adoption of Article II, Section 7, despite the fact that Robert Reffkin—Compass's founder, chief executive officer, and REBNY representative—voted to adopt that very rule. *See infra at* 5.

In May 2022, almost two months after this Court denied REBNY's motion to dismiss but less than four months before the end date for document discovery then in effect, Compass issued broad document and deposition subpoenas on Elliman. Elliman objected to those subpoenas on numerous grounds, as explained further below. However, inasmuch as Compass's complaint survived a motion to dismiss and a motion for reconsideration, and because Elliman had nothing to hide, Elliman worked with the utmost good faith to reach a compromise with Compass about the scope of a document review and production, while attempting to avoid motion practice before this Court.

From May 2022, when Compass issued its subpoenas, all the way through November 2022, Compass continually pressed Elliman on search terms, custodians, and the timing of an Elliman production—repeatedly citing this case's discovery deadlines in doing so. Elliman significantly narrowed Compass's initial requests through negotiation, and Elliman and Compass eventually reached agreement on four custodians and fifteen search terms, which resulted in a review set of approximately 43,000 items. And by early December 2022, Elliman completed the work necessary to respond to Compass's document subpoena, including negotiating the scope of the document requests, custodians, and search terms; reviewing approximately 43,000 items; and preparing a production set. Then, a mere few days after Elliman completed its review, without notice to Elliman and citing no changes either in REBNY rules or in Elliman's alleged conduct, Compass filed a letter on December 9, 2022, requesting leave to file a motion for voluntary withdrawal, effectively conceding its case had no merit. *See* ECF No. 89.

The most recent communication between Compass and Elliman prior to the filing of Compass's December 9 letter, was on November 3, 2022, when the parties reached agreement on the final search string for the agreed-upon custodians. Yet from November 3 through December 9, Compass failed to give Elliman any indication that it was considering or planning a voluntary dismissal of this suit. Certainly Compass did not decide out of the blue on the morning of December 9 to dismiss this suit. At the same time, Compass well knew that Elliman was in the midst of a document review and preparation of a production set. Compass should have informed Elliman immediately when it started even considering dismissing this suit (which may have been even before November 3), so that Elliman could at least put its work on hold until Compass made a decision one way or the other. Compass's failure to give a third-party subpoena recipient such notice—especially one who acted with the utmost good-faith cooperation—constitutes a

violation of the Federal Rules of Civil Procedure, and Elliman is entitled to its attorney's fees spent in responding to Compass's subpoenas. *See* Fed. R. Civ. P. 45 (d)(1), *supra* at 1-2.

But it is not simply the November through early December period for which Elliman is entitled to its fees. Compass's voluntary dismissal of this suit, without citing any REBNY rule changes or any changes in behavior by Elliman, is a concession that Compass knows that its suit and its allegations concerning Douglas Elliman never had any merit. This is underscored and made obvious by the fact that Compass voted in favor of the very rule that formed the basis of its allegations. Thus, the entirety of Elliman's good-faith responses to Compass's subpoena constitutes an "undue burden or expense" on Elliman that Compass did not "take reasonable steps to avoid imposing" and this Court "must…impose an appropriate sanction" on Compass. *Id.* Compass has wrongly used this Court to force its competitor to incur significant legal fees in a meritless lawsuit, and it must face the consequences for doing so.

If the Court does not sanction Compass under Rule 45(d)(1), then future subpoena recipients will be given an incentive to delay cooperation and compliance until the last possible moment. Based on Corcoran's letter, it appears that Corcoran and Compass did not even reach the point of exchanging proposals on search terms and custodians (let alone reaching agreement on terms and custodians), and Corcoran still expended $82,020 in attorney's fees responding to Compass's subpoena. *See* ECF No. 93 at 2. Elliman, meanwhile, completed essentially all the requisite work for responding to Compass's document subpoena in a manner that showed the utmost level of good-faith cooperation, and as a result, incurred even more in attorney's fees. If Elliman is not compensated for these fees in light of Compass's present attempt to voluntarily withdraw its meritless case, future subpoena recipients will have a disincentive to cooperate and an incentive to delay. By contrast, if the Court enforces the obligations of Rule 45(d)(1), and

orders Compass to bear the unnecessary cost its lawsuit and subpoenas inflicted on Elliman, this Court will deter the filing of baseless actions instituted solely to tarnish the reputations of, and create unnecessary discovery obligations for, innocent competitors.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 12, 2021, Compass filed its complaint in this matter. ECF No. 1. The complaint centers around Article II, Section 7 of the REBNY Universal Co-Brokerage Agreement Rules ("UCBA"), which Compass alleged "was conceived specifically with thwarting Compass in mind." *Id.* ¶ 6. Compass's complaint referred to Article II, Section 7 over 70 times, including in its prayer for relief, where it sought to enjoin the enforcement of that rule. *See generally id.* Compass's complaint alleged that prior to 2018:

> REBNY and its co-conspirators tried to use the REBNY rules to block agents from taking their clients with them to Compass without actually making any formal rule changes. But REBNY soon realized that the plain language of the UCBA did not allow such actions to be taken….Then, in January 2018, after a campaign spearheaded by Corcoran and Douglas Elliman and in conjunction with REBNY as an independent entity, REBNY adopted Article II, Section 7, of the UCBA…. adopted to impede competition, particularly from Compass[.]

*Id.* ¶¶ 61-63. Left out of Compass's complaint is the fact that Robert Reffkin, Compass's founder and chief executive officer, voted on January 9, 2018 to approve these very same changes to Article II, Section 7. *See* Declaration of Jessica T. Rosenberg ("Rosenberg Decl."), ¶ 21.

On March 31, 2022, this Court denied REBNY's motion to dismiss Compass's complaint. *See* ECF No. 32. On April 18, 2022, the Court ordered all document discovery to be completed by September 16, 2022. *See* ECF No. 39 at 2. On May 25, 2022, Compass issued a document subpoena and a deposition subpoena on Elliman. *See* Rosenberg Decl. Exs. A and B. The document subpoena contained twenty requests (many with subparts), eighteen of which sought

"[a]ll documents and communications," "[a]ll documents," or "[a]ll communications," as the case may be, regarding the subject matter of the requests. *See generally id.* Ex. A. For example, Request No. 18 sought "*[a]ll* documents concerning *any* discussions, evaluations, analyses, summaries, or reviews of competition between brokerages in New York City, including but not limited to" various sub-categories of information. *Id.* at 13 (emphases added). Meanwhile, the deposition subpoena listed fifteen topics (many with subparts), nine of which began with "[a]ny allegations," "[a]ny instance," "[a]ny policies or practices," or "[a]ny studies, evaluations, or analyses"—including, for example, Topic No. 10, which sought testimony on "[a]ny studies, evaluations, or analyses during the relevant time period regarding Douglas Elliman's competitors in the real estate brokerage market." *See* Rosenberg Decl. Ex. B. Other patently overbroad topics included Topics Nos. 13 and 14, which sought Elliman's testimony on "Douglas Elliman's involvement with REBNY from 2010 to the present" and "Douglas Elliman's usage of the REBNY RLS during the relevant time period." *Id.* at 9-10. The "Relevant Time Period" in both subpoenas was defined as "January 1, 2015 to the present" (*see* Rosenberg Decl. Ex. A at 3, Ex. B at 4)—a period which, dating more than six years prior to the filing of Compass's complaint, is over a year longer than the maximum time period authorized by this Court's Individual Rules.

On June 8, 2022, counsel for Elliman and Compass agreed on dates for Elliman's responses and objections and agreed to put the deposition date on hold pending further discussion. *See* Rosenberg Decl., ¶ 8. On June 27, 2022, Elliman served its responses and objections to Compass's subpoenas. *See id.*, Exs. C and D. Elliman objected to Compass's twenty document requests and fifteen subpoena topics on numerous grounds, including that the requests sought large amounts of irrelevant information, and that many of the requests sought materials that were plainly available from REBNY, the actual defendant in the case. *See generally id.* For example, Request No. 9

sought "[a]ll communications between [Elliman] and REBNY regarding Compass" and Request No. 14 sought "[a]ll communications between you and REBNY regarding the movement of real estate agents, employees, or listings between brokerages." *See id.* Ex. C at 12-13, 16. Nonetheless, Elliman agreed to produce materials related to Document Requests Nos. 1-4, which related to Article II, Section 7 and Article III, Section 3.B (another REBNY rule mentioned in Compass's complaint), subject to reasonable limitations on custodians and scope. *See id.* at 5-9.

On Friday, July 8, 2022, the parties held a meet-and-confer, during which they discussed Compass's document requests and Elliman's objections thereto, and Elliman agreed to propose search terms and custodians for Document Requests Nos. 1-4. *See* Rosenberg Decl., ¶ 9. On Tuesday, July 12, 2022, Compass's counsel followed up to write that "[w]e just wanted to check in after our meet and confer last week and see if it is possible to get your proposed custodians and search terms for Requests 1-4 by the end of this week. We want to keep the conversation moving on the discovery and have a tight discovery deadline in this case." *Id.*, Ex. E at 14-15. On July 20, 2022, Elliman's counsel responded to Compass's counsel, proposing two custodians— including Elliman's then-CEO of its New York City business who was also Elliman's representative on REBNY's board of directors during the time period covered by the complaint— and search terms that would pick up any reference to Article II, Section 7 or Article III, Section 3.B. *Id.* at 13. On July 28, 2022, Compass's counsel responded with eight proposed search strings, four of which comprehended a much broader scope than the two at-issue REBNY rules. *Id.* at 11-12. As a result of Elliman's advocacy during the July 8 meet-and-confer, Compass also attached a letter that narrowed most of its document requests and agreed to "defer" the four document requests that plainly sought materials entirely available from REBNY, the defendant in this case. *Id.*; *see also* Rosenberg Decl., Ex. F. The day before, on July 27, 2022, this Court had denied

REBNY's motion for reconsideration of its motion to dismiss. ECF No. 50.

In the first few days of August 2022, Elliman worked to assess the review set of Compass's eight proposed search strings for the two agreed-upon custodians, and determined that six of those eight search strings collectively returned approximately 9,000 items, but the remaining two search strings collectively returned approximately 160,000 items. *See* Rosenberg Decl., ¶ 10. On Monday, August 8, 2022, Elliman's counsel proposed a meet-and-confer for Friday, August 12, 2022, which counsel for the parties conducted on that date. *Id.*, Ex. E at 10. During that call, Elliman's counsel informed Compass's counsel that it agreed to the six more narrow search terms that Compass proposed, but that it would be an undue burden for Elliman to review the approximately 160,000 items that return pursuant to the other two. *See* Rosenberg Decl., ¶ 11. Elliman also explained that within the agreed-upon custodians and search terms, Elliman would also produce materials responsive to Requests 5-6, and to another request as narrowed by Compass's July 28 letter. *Id*.

A week later, on August 19, 2022, Compass's counsel emailed Elliman's counsel, writing "[t]hank you for the productive call last week." *See* Rosenberg Decl. Ex. E at 9. In that email, Compass's counsel proposed narrowed versions of the two rejected search strings and also inquired about adding two additional Elliman custodians. *Id.* On August 24, 2022, on joint motion by the parties, the Court extended the discovery deadlines in the case by four months. ECF No. 58. Due to, and as of the date of, that extension, there was more time until the end date for document production (January 16, 2023) than there was from the date Compass issued its subpoenas (May 25, 2022) until the initial end date for document production (September 16, 2022). Over the next few weeks, which included Labor Day weekend, Elliman and its counsel considered Compass's August 19 requests. The two narrowed search strings returned approximately 23,000 items, which

was significantly down from the prior number of approximately 160,000 items, but still a large set for Elliman to review, knowing that Compass's allegations were meritless. *See* Rosenberg Decl., ¶ 12.

On September 16, Compass's counsel followed up on its August 19 requests, stating that "[o]ur discovery deadline is fast approaching[,]" *see* Rosenberg Decl. Ex. E at 8, even though there were then exactly four months until the end of document discovery and on the date Compass served its subpoenas, there were less than four months until the then-applicable end date for document discovery. On September 19, 2022, Elliman's counsel responded that it agreed to the narrowed versions of the two remaining terms and that Elliman will thus "move forward with preparing a production set of responsive documents, based on your eight proposed search terms" and the two agreed-upon custodians, with a timeframe dating back to March 12, 2016—five years before the filing of Compass's complaint and the maximum default timeframe permitted by this Court's Individual Rules. *Id.* at 7-8. Elliman's counsel also stated that as to the Compass's additional two proposed custodians, they "were much less involved with REBNY than" the two agreed-upon custodians, but "[i]f you think there is good reason for including them as custodians based on communications they had with Compass and/or agents, we are willing to consider targeted searches within their emails that pertain to the circumstances surrounding those communications." *Id.* During a meet and confer on September 30, 2022, Elliman further explained that, subject to the agreed-upon custodians and search terms, Elliman would produce documents responsive to all of Compass's document requests. *See* Rosenberg Decl., ¶ 13. Elliman also stated that it was in the midst of its review and may be able to make a production in October. *Id.*

On October 10, 2022, Compass proposed seven search strings for the two newly proposed custodians and also "ask[ed] that you please advise us regarding the ETA for your initial document

production[.]" *See* Rosenberg Decl. Ex. E at 4-5. Six of Compass's proposed search strings collectively returned approximately 4,800 items, while the seventh returned well over 50,000 items. *See* Rosenberg Decl., ¶ 14. On October 14, 2022, Elliman's counsel wrote to Compass's counsel, agreeing to the six more targeted search strings, but explaining that the seventh returned over ten times as many documents as the other six combined and that it would constitute an undue burden on Elliman to review those materials. *See* Rosenberg Decl. Ex. E at 4. Elliman also explained that given the additional agreed-upon custodians, it would need until November to make any production. *Id.* Over the next few weeks, Compass and Elliman negotiated over the scope of the seventh search string, and during that period, Compass pressed Elliman (as it had done previously) about discovery deadlines. *Id.* at 1-4. For example, while Elliman was still considering a response to Compass's counsel's email from October 26, Compass followed up two days later on October 28, writing that "[g]iven our pending discovery deadlines, we're eager to get this resolved." *Id.* at 2. By November 3, Elliman and Compass reached an agreement on a narrowed version of the seventh string, which returned approximately 6,000 additional items. *Id.* at 1; *see also* Rosenberg Decl., ¶ 15.

In sum, after multiple meet and confers, Elliman agreed to the initial versions of twelve of Compass's fifteen proposed search terms and to narrowed versions of the remaining three, and Elliman thus agreed to review approximately 43,000 items in the files of four custodians. Elliman worked diligently throughout the fall, and especially in October and November to review these items, and by early December—slightly over a month before this case's date for the completion of document discovery—Elliman had completed first-level, second-level, and privilege review of the approximately 43,000 items, and was prepared to produce approximately 3,500 responsive items. *Id.*, ¶ 16. At the same time, from November 3 until the filing of its December 9 letter seeking

voluntary dismissal, Compass had no communications with Elliman, even though it knew Elliman was in the midst of reviewing and preparing a production set based on four agreed-upon custodians and fifteen agreed-upon search strings. *Id.*, ¶ 17. Meanwhile, though the parties' joint status letters indicated that no party had begun producing documents, Elliman still assumed Compass intended to prosecute its case, given that on November 4, it reiterated its request of the Court for leave to file a motion to compel non-party Corcoran to produce documents. *See* ECF No. 82.

On December 9, 2022, without any notice to Elliman, Compass filed a letter seeking voluntary dismissal of its case. ECF No. 89 The letter made conclusory references to "procompetitive changes within the market regarding approaches to agent mobility and referral of listings," but did not indicate any change in REBNY rules, nor any change in behavior by Elliman, from the date Compass filed its complaint in March 2021. *Id.* On December 19, 2022, this Court dismissed the case. ECF No. 95. Less than three weeks later on January 6, during the week immediately following the Christmas and New Year's Day holidays, Elliman sent Compass a letter in an attempt to negotiate a compromise whereby Compass would compensate Elliman for a portion of the fees that Elliman spent responding to Compass's entirely superfluous subpoenas. *See* Rosenberg Decl., ¶ 18. Compass replied on January 10 that it had no intention of compromising. *Id.*, ¶ 19.

Elliman's attorney's fees throughout this matter were reasonable. Elliman's law firm staffed the matter leanly, assigning one partner, one senior associate, and one junior associate to handle the entirety of the work. These three attorneys billed at reasonable rates for this district, for competitor firms, and for the nature of the work here, which involved responding to two broad subpoenas in a case in which the client was named as a co-conspirator in an antitrust complaint almost 60 pages in length. The attorneys billed their time in tenths of an hour, keeping

contemporaneous records of how the time was spent.  The total amount sought in this motion is $211,678.  If requested, Elliman is willing to provide the Court with a sealed copy of Elliman's legal bills (which are protected by attorney-client privilege) for *in camera* inspection.  *See* Rosenberg Decl., ¶ 20.

## ARGUMENT

**A.**     **Standard of Review**

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1).  "Courts typically undertake a two-part inquiry to determine whether sanctions are warranted under Rule 45(d)(1): [i] whether the challenged subpoena imposed an undue burden or expense on the persons subject thereto; and [ii] if so, what, if any, reasonable steps the subpoenaing party and its counsel took to avoid imposing such a burden." *Breaking Media, Inc. v. Jowers*, No. 21 MISC. 194 (KPF), 2021 WL 1299108, at *7 (S.D.N.Y. Apr. 7, 2021) (citation omitted) (cleaned up).  "Undue burden is to be assessed in a case-specific manner[.]" *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 289, 202 L. Ed. 2d 136 (2018) (upholding magistrate judge's "finding that sanctions were warranted under Rule(d)(1)").  "Trial courts have broad discretion to determine whether a subpoena imposes an undue burden[.]" *In re Novartis & Par Antitrust Litig.*, No. 18 CIV. 4361 (AKH), 2020 WL 3317203, at *5 (S.D.N.Y. June 18, 2020) (citation and internal quotation marks omitted); *see also id.* ("Litigants and courts are instructed to be especially solicitous of non-party targets of subpoenas" (citation and internal quotation marks

omitted)).

Furthermore, bad faith on the party of the subpoenaing party is <u>not</u> necessary for a discretionary award of attorney's fees under Rule 45(d)(1). *Id.* "Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on nonparties. Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982). A party does *not* need bring a Rule 45 motion for fees before responding to a subpoena. *Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*, 2006 WL 2996645, at *2 (S.D.N.Y. Oct. 13, 2006).

**B.** **The Court Should Award Elliman its Attorney's Fees Because Compass Failed to Take Reasonable Steps to Avoid Imposing an Undue Burden on Non-Party Elliman**

A "case-specific" analysis, *In re: Mod. Plastics Corp.*, 890 at 251, compels the conclusion that Compass should compensate Elliman for the attorney's fees Elliman incurred in responding to Compass's subpoenas. Compass knew its case was meritless from the beginning, given that its own founder and chief executive officer voted to approve the very REBNY rule that formed the basis of Compass's (false) allegations. *See supra* at 5. The fact that Compass voluntarily withdrew this suit without citing any change to REBNY rules or any changes in Elliman's behavior is proof that Compass knows its case had no merit. But even assuming Compass did initiate its case without any bad faith, that does not alleviate its responsibility to compensate Elliman for the fees it incurred responding to Compass's subpoenas. "'A non-party required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court.'" *See In re Novartis & Par Antitrust Litig.*, No. 18 CIV. 4361 (AKH), 2020 WL 3317203, at *5 (S.D.N.Y. June 18, 2020) (quoting Fed. R. Civ. P. 45

-13-

Application Note). Thus, all of the attorney's fees Elliman incurred in this matter constitute an undue burden. Indeed, courts often award fees even without the extraordinary circumstance of the subpoenaing party voluntarily dismissing the suit just as the non-party subpoena recipient completed a large document review under pressure from that subpoenaing party. *See id.* at *6 (awarding non-party attorney's fees, even though "the materials requested by the subpoena are relevant to this complex dispute", because "Plaintiffs' production request is broad, and complying with Plaintiffs' subpoena would impose a burden on" the non-party subpoena recipient).

Even if the Court were not inclined to award Elliman all of its attorney's fees, there can certainly be no doubt that in November and early December, Compass utterly failed in its obligation to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and the Court "must enforce this duty[.]" Fed. R. Civ. P. 45(d)(1). While Elliman was in the thick of and completing a review of tens of thousands of documents, and preparing a final production set—of which Compass was keenly aware, having prodded Elliman into doing so—Compass was in the midst of considering voluntarily dismissing this suit. Once Compass began considering this possibility, it had the obligation to inform Elliman so that Elliman could, at a minimum, put its review of hold.

Compass must be sanctioned for its blatant violation of Rule 45 by failing to avoid imposing undue expense on Elliman. By enforcing the obligations of Rule 45(d)(1), and ordering Compass to bear the unnecessary cost its lawsuit and subpoenas inflicted on Elliman, this Court will deter the filing of baseless actions instituted solely to tarnish the reputations of, and create unnecessary discovery obligations for, innocent competitors.

## **CONCLUSION**

For all the foregoing reasons, the Court should grant non-party Elliman's Motion in its entirety and grant such other and further relief as it deems just and proper.

Dated: February 2, 2023
      New York, New York

                                                    KASOWITZ BENSON TORRES LLP

                                                    By: */s/ Jessica T. Rosenberg*
                                                    Jessica T. Rosenberg
                                                    (jrosenberg@kasowitz.com)
                                                    1633 Broadway
                                                    New York, New York 10019
                                                    Telephone: (212) 506-1700
                                                    Facsimile: (212) 506-1800

                                                    *Counsel to Non-Party Douglas Elliman, LLC*