# EXHIBIT A

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| | |
|---|---|
| Compass, Inc. and Compass RE NY, LLC <br> *Plaintiff* <br> v. <br> Real Estate Board of New York, Inc. <br> *Defendant* | Civil Action No. 1:21-cv-02195 |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Douglas Elliman, LLC, 575 Madison Ave., New York, NY 10022

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A.

| Place: Crowell & Moring LLP, c/o Chahira Solh <br> 590 Madison Ave., 20th Floor, New York, NY 10022 | Date and Time: <br> 06/10/2022 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 5/25/2022

*CLERK OF COURT*

_____ OR /s/ Chahira Solh
*Signature of Clerk or Deputy Clerk* _____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Compass, Inc. and Compass RE NY, LLC , who issues or requests this subpoena, are:

Chahira Solh, Crowell & Moring LLP, 3 Park Plaza, 20th Floor, Irvine, CA 92614, csolh@crowell.com, Tel: 949-263-8400

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 1:21-cv-02195

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A

# DEFINITIONS

Insofar as any of the terms below are used herein, the following definitions shall apply:

1. "Douglas Elliman," "you," or "your" means Douglas Elliman LLC and its agents, employees, shareholders, officers, former employees, former officers, directors, subsidiaries, former subsidiaries, parent corporations, former parent corporations, attorneys, affiliated contractors such as real estate agents, former affiliated contractors such as real estate agents, or other persons or entities acting on its behalf.

2. "Defendant" or "REBNY" means the Real Estate Board of New York, Inc. and its agents, employees, shareholders, officers, directors, former employees, former officers, former directors, subsidiaries, former subsidiaries, parent corporations, former parent corporations, attorneys, or other persons or entities acting on their behalf.

3. "Plaintiffs" or "Compass" means Compass, Inc. and Compass RE NY, LLC and their agents, employees, shareholders, officers, former employees, former officers, directors, subsidiaries, former subsidiaries, parent corporations, former parent corporations, attorneys, affiliated contractors such as real estate agents, former affiliated contractors such as real estate agents, or other persons or entities acting on its behalf.

4. "Person" means any individual, corporation, partnership, association, organization, or other entity of any type or nature.

5. "Third party" means any Person or Persons other than the Plaintiffs or Defendant identified herein.

6. "Communication" means a verbal or nonverbal exchange, whether written or oral, including inquiries, discussions, conversations, negotiations, agreements, understandings,

meetings, telephone conversations, letters, notes, telegrams, e-mails or voice-mails or instant messages, and advertisements.

7. "Document" is used in the broadest sense permissible under the Federal Rules of Civil Procedure and shall include, without limitation, electronically stored information (see also Definition No. 8 below), letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, summaries, records of telephone conversations, telegrams, facsimile transmissions and receipts, notes, agendas, meeting minutes, reports, compilations, notebooks, work papers, graphs, charts, blueprints, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, audiotapes, film and sound reproductions, sales, advertising and promotional literature, agreements, stored recordings, minutes or other records of meetings, all written or graphic records or representations of any kind, and mechanical representations of any kind. Any non-identical copies of a document, whether different from the original because of the inclusion of notes, comments, notations, interlineations, receipt stamps, or otherwise, are to be considered a separate "document."

8. "Electronically stored information" or "ESI" includes, without limitation, the following: (a) information that is generated, received, processed, and recorded by computers and other electronic devices; (b) internal or external web sites; (c) output resulting from the use of any software program, including, without limitation, word processing Documents, slides or PowerPoints, spreadsheets, database files, charts, graphs, outlines, electronic mail, AOL Instant MessengerTM (or other instant messaging program), or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside; (d) activity listings of electronic mail receipts and/or transmittals; and (e) any and all items stored on computer memories, hard disks, floppy disks, CD- ROM, magnetic

tape, microfiche, or in any other vehicle for digital data storage or transmittal, such as, but not limited to, a smart phone or personal digital assistant, *e.g.*, Palm Pilot, Blackberry, or similar device, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all Documents requested herein.

9. "Policy," "procedure," or "practice" means any guidelines, directive, custom or procedure, whether written or unwritten, formal or informal.

10. The connectives "and" and "or" and "between" and "among" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a request all information that otherwise might be construed to be outside of its scope.

11. "Concerning," "relating to," and "relate to" shall mean analyzing, comprising, consisting of, constituting, containing, contradicting, corroborating, describing, discussing, documenting, embodying, evidencing, identifying, including, mentioning, pertaining to, referring to, reflecting, relating to, reporting, showing, supporting, or stating the particular subject matter identified, and includes any document, communication, or other exchange that constitutes, contains, embodies, comprises, reflects, identifies, states, deals with, comments on, responds to, describes, analyzes, or is in any way pertinent to the subject.

12. "Reflecting" means showing, indicating, evidencing, demonstrating, describing, or identifying.

13. "Any" shall mean any or all and the term "all" shall mean any or all.

14. "Relevant time period" shall mean from January 1, 2015 to the present.

15. The use of the singular form of any word or phrase shall include the plural form, and vice versa.

16. The use of the past or present tense in a request includes both past and present tenses.

17. The word "including" means including without limitation.

18. "UCBA" means the REBNY RLS Universal Co-Brokerage Agreement Rules and Regulations.

19. "Article II, Section 7" shall mean Article II, Section 7 of the 2018, 2019, and 2020 versions of the UCBA, which as of December 31, 2020 read:

> Section 7. Communications with Owners. No Participant may contact the Owner regarding a current Exclusive Listing without the Exclusive Agent's prior consent. If an Exclusive Agent leaves the brokerage firm with whom they are affiliated (such firm shall be referred to as the "Former Firm" and Exclusive Agent as the "Former Exclusive Agent"), prior to leaving that firm, the Former Exclusive Agent may advise an Owner that they are leaving the firm. After the Former Exclusive Agent joins another firm participating in the RLS, then the Former Exclusive Agent may not initiate any communication with the Owner regarding a current Exclusive Listing without the Exclusive Broker's prior written consent. For the avoidance of doubt, the Former Exclusive Agent must not in any way interfere with any Exclusive Listing to which their Former Firm is a party. For clarification purposes only, interference shall be deemed to include, but not be limited to, (i) directly or indirectly encouraging any Owner to terminate or breach the terms of any listing agreement between the Owner and the Former Firm, (ii) advertising any property subject to a pre-existing listing agreement with the Former Firm, (iii) disseminating, or attempting to disseminate via the RLS, listing information for any property subject to a pre-existing listing agreement with the Former Firm, or (iv) suggesting, directly or indirectly, that an Owner may unilaterally terminate a valid property listing agreement with Former Firm when the Former Exclusive Agent knows or should know that the subject listing agreement provides no such termination right.

20. "Article III, Section 3.B" shall mean Article III, Section 3.B of the 2018, 2019, and 2020 versions of the UCBA, which as of December 31, 2020 read:

> Section 3. Solicitation of Exclusive Listings. During the term of an Exclusive Listing, a Participant who is not a party thereto and/or whose firm is not a party thereto ("Participant B"):
>
> A. may not solicit the Owner with respect to the Exclusive Property or do anything to induce the Owner to terminate the current Exclusive Listing so

that the Owner will enter into a new Exclusive Listing with the Participant, and the firm with whom the Participant is affiliated; but

B. may enter into a separate agreement, such as an Exclusive Listing to lease the Exclusive Property, with the Owner concerning the Exclusive Property where that agreement (the "Second Agreement") covers matters which are not covered by the Exclusive Listing. Before entering into the Second Agreement, Participant B should inform the Owner in writing that by entering into the Second Agreement the Owner could be liable for a commission under both the Exclusive Listing and the Second Agreement.

The term solicit as used in this provision does not include mailings or other multiple solicitations, where it is impractical to distinguish Exclusive Properties that are already subject to Exclusive Listings or instances where the Owner initiates contact with Participant B. If solicited by an Owner who is a party to an Exclusive Listing, Participant B may respond to the Owner's inquiry, but such response cannot affect and/or interfere with the original Exclusive Listing in any way.

21. "REBNY member(s)" means any member of REBNY, regardless of whether that member pays a membership fee and regardless of whether that member is an individual, a brokerage, a corporation, or any other type of entity.

22. "Corcoran" means NRT New York LLC d/b/a The Corcoran Group and its agents, employees, shareholders, officers, former employees, former officers, directors, subsidiaries, former subsidiaries, parent corporations, former parent corporations, attorneys, affiliated contractors such as real estate agents, former affiliated contractors such as real estate agents, or other persons or entities acting on its behalf.

23. "REBNY RLS" means the REBNY Residential Listing Service.

24. "Property listing" means the listing of any property that appears on the REBNY RLS.

25. "Exclusive listing" means a written agreement setting forth the terms and conditions by which the owner of a residential property has appointed an "Exclusive Broker" as defined by the 2020 version of the UCBA.

26. "Real estate agent" means any person who represents buyers and sellers of real estate in real estate transactions, including persons who are licensed as real estate brokers or as real estate salespersons.

## INSTRUCTIONS

1. Douglas Elliman shall identify, produce, and permit the visual inspection and reproduction of the following documents, electronically stored information, and things which are in its possession, custody, or control, including documents, electronically stored information, and things in the actual or constructive possession of Douglas Elliman, its attorneys, experts, and anyone else acting on its behalf. The production and visual inspection shall take place at Crowell & Moring LLP, 590 Madison Avenue, 20th Floor, New York, NY 10022 (or such other place as may be stipulated to by the parties).

2. The relevant time period for the requests is from January 1, 2015 until the present unless stated otherwise within the request itself.

3. Unless otherwise stated, the geographic scope covered by these requests is the City of New York.

4. If Douglas Elliman claims that any document, tangible object, or other thing responsive to any request was once in its possession, custody, and/or control and has since been lost, discarded, destroyed, deleted, relinquished, or disposed in some other manner, identify with particularity each such document and set forth:

(a) The date the document was lost, discarded, destroyed, deleted, relinquished, or disposed;

(b) The circumstances under which the document was lost, discarded, destroyed, deleted, relinquished, or disposed; and

(c) The identity of all persons who had knowledge of, or were present when, the document was lost, discarded, destroyed, deleted, relinquished, or disposed, as well as all persons who authorized such actions.

5. In the event that Douglas Elliman contends that any document responsive to any discovery request below is privileged or otherwise excludable from discovery: (i) identify each such document by date, author(s), signer(s), intended recipient(s), and addressee(s); (ii) identify each person to whom a copy was furnished or to whom the information or advice was conveyed; (iii) state the general subject matter of the document; and (iv) state the ground on which the claim of privilege or immunity from disclosure is based. Failure to do so will constitute a waiver of such a claim.

6. If Douglas Elliman claims a privilege or immunity with regard to any document responsive to any discovery request below, Douglas Elliman should nevertheless produce all portions of such document that contains information not appropriately subject to a claim of privilege or immunity.

7. In addition to the specific instructions set forth herein, these document requests incorporate the instructions set forth in Rules 26, 34, and 45 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of New York.

## REQUESTS FOR DOCUMENTS AND THINGS

**Request No. 1.**

All documents and communications concerning the development and adoption of Article II, Section 7 during the relevant time period, including but not limited to: documents from or regarding meetings you attended where the development and adoption of Article II, Section 7

was discussed; communications between Douglas Elliman employees or other Douglas Elliman-affiliated persons regarding the development and adoption of Article II, Section 7; communications between you and REBNY regarding the adoption and development of Article II, Section 7; and communications between you and any other third party concerning the development and adoption of Article II, Section 7.

**Request No. 2.**

All documents and communications concerning revisions to Article II, Section 7 during the relevant time period, including but not limited to: documents from or regarding meetings you attended where the revisions of Article II, Section 7 were discussed; communications between Douglas Elliman employees or other Douglas Elliman-affiliated persons regarding the revisions of Article II, Section 7; communications between you and REBNY regarding the revisions of Article II, Section 7; and communications between you and any other third party regarding the revisions of Article II, Section 7.

**Request No. 3.**

All documents and communications concerning the revisions to Article III, Section 3.B during the relevant time period, including but not limited to: documents from or regarding meetings you attended where the revisions of Article III, Section 3.B were discussed; communications between Douglas Elliman employees or other Douglas Elliman-affiliated persons regarding the revisions of Article III, Section 3.B; communications between you and REBNY regarding the revisions of Article III, Section 3.B; and communications between you and any other third party regarding the revisions of Article III, Section 3.B.

**Request No. 4.**

All documents and communications concerning any allegation that Compass violated Article II, Section 7, including but not limited to: any complaints and allegations, whether formal or informal, that you sent to REBNY alleging that Compass violated Article II, Section 7; any communications between Douglas Elliman employees or other Douglas Elliman-affiliated persons regarding an alleged or actual violation of Article II, Section 7; any communications between you and a third party regarding an alleged or actual violation of Article II, Section 7; any documents from any REBNY dispute resolution procedure involving an alleged or actual Article II, Section 7 violation; and any documents or communications concerning or reflecting any policies, practices, or procedures (whether formal or informal) you have or have had in place regarding Article II, Section 7.

**Request No. 5.**

All documents and communications concerning any allegation that another REBNY Member (other than Compass) violated Article II, Section 7, including but not limited to: any complaints and allegations, whether formal or informal, that you sent to REBNY alleging that another REBNY Member (other than Compass) violated Article II, Section 7; any communications between Douglas Elliman employees or other Douglas Elliman-affiliated persons regarding an alleged or actual violation of Article II, Section 7; any communications between you and a third party regarding an alleged or actual violation of Article II, Section 7; any documents from any REBNY dispute resolution procedure involving an alleged or actual Article II, Section 7 violation; and any documents or communications concerning or reflecting any policies, practices, or procedures (whether formal or informal) you have or have had in place regarding Article II, Section 7.

**Request No. 6.**

All documents and communications concerning any situation where another REBNY Member alleged that you violated Article II, Section 7, including but not limited to: any complaints and allegations, whether formal or informal, that you received regarding your alleged or actual violation Article II, Section 7; any communications between Douglas Elliman employees or other Douglas Elliman-affiliated persons regarding an alleged or actual violation of Article II, Section 7; any communications between you and a third party regarding an alleged or purported violation of Article II, Section 7; and any documents from any REBNY dispute resolution procedure involving an alleged or actual Article II, Section 7 violation.

**Request No. 7.**

All documents and communications concerning any situation where you were asked to release or made a determination whether to release any property listing or exclusive listing for a real estate agent who was leaving Douglas Elliman for another real estate brokerage, regardless of whether or not you released the property listing or exclusive listing, including but not limited to: documents related to property listings or exclusive listings of real estate agents who left Douglas Elliman for Compass; communications between you and another brokerage regarding the release of a property listing or exclusive listing; communications between you and REBNY regarding the potential or actual release of a property listing or exclusive listing; communications between you and a property owner regarding the potential or actual release of a property listing or exclusive listing; and any documents or communications concerning or reflecting any policies, practices, or procedures (whether formal or informal) you have or have had in place regarding the release of exclusive listings or property listings for an agent who was leaving Douglas Elliman for another real estate brokerage.

**Request No. 8.**

All documents and communications concerning any situation where you refused to pay commissions to or tried to claw back commissions from a real estate agent who was leaving or left Douglas Elliman for another real estate brokerage, including but not limited to: documents related to the commissions of real estate agents who left Douglas Elliman for Compass and any documents or communications concerning or reflecting any policies, practices, or procedures (whether formal or informal) you have or have had in place regarding the paying of commissions to a real estate agent who was leaving Douglas Elliman for another real estate brokerage.

**Request No. 9.**

All communications between you and REBNY regarding Compass.

**Request No. 10.**

All communications between you and Corcoran regarding Compass.

**Request No. 11.**

All communications between you and a Douglas Elliman real estate agent or employee or former Douglas Elliman real estate agent or employee regarding Compass's recruiting of real estate agents or employees, including but not limited to: communications where you discussed Compass's recruiting tactics; communications where you asked or otherwise encouraged a Douglas Elliman real estate agent or employee not to move to Compass; communications where you disparaged Compass; or communications where you discussed the release or potential release of listings to a real estate agent who was moving or was planning to move to Compass.

**Request No. 12.**

All communications between you and a property owner regarding Compass's recruiting of real estate agents, including but not limited to: communications where you disparaged

Compass's recruiting methods and communications regarding a property listing or exclusive listing where the property owner's real estate agent had moved to Compass.

**Request No. 13.**

All communications between you and a property owner regarding Compass's business practices, including but not limited to: communications regarding a Compass property listing or exclusive listing where you wanted the property owner to move the listing from Compass to Douglas Elliman; communications regarding a Douglas Elliman property listing or exclusive listing where the property owner wanted to move that listing to Compass; and communications where you disparaged Compass's quality of service, product offerings, real estate agents, staff, or other features of Compass's business.

**Request No. 14.**

All communications between you and REBNY regarding the movement of real estate agents, employees, or listings between brokerages.

**Request No. 15.**

All communications between you and Corcoran regarding the movement of real estate agents, employees, or listings between brokerages.

**Request No. 16.**

Documents sufficient to show your involvement with REBNY from 2010 to the present day, including documents sufficient to show:

(a) how long Douglas Elliman has been a member of REBNY;

(b) how many of your employees or affiliated-persons are REBNY members;

(c) how much you pay REBNY in membership fees each year;

(d) any awards you have received from REBNY, such as the "First Price Residential Sales Award" given out by REBNY at its annual gala; and

(e) any other amount of money you have given to REBNY, such as event sponsorships, or donations.

**Request No. 17.**

Documents sufficient to show the identity of any individual who is or was associated with you and also has or had a leadership position within REBNY during the relevant time period, such as serving as a REBNY officer; holding a seat on the REBNY Board of Directors; or holding a seat on any other REBNY committee such as the REBNY Residential Brokerage Board of Directors or the REBNY Residential Upper Manhattan Committee.

**Request No. 18.**

All documents concerning any discussions, evaluations, analyses, summaries, or reviews of competition between brokerages in New York City, including but not limited to any analyses of brokerage size measured by real estate agent count, by number of listings submitted to the REBNY RLS, by number of transactions closed over a certain period of time, or by revenue; any analyses of new brokerages opening in New York City; and any analyses of brokerages ceasing to operate in New York City.

**Request No. 19.**

All documents concerning or relating to any discussions, evaluations, analyses, summaries, or reviews of real estate agent movement between brokerages in New York City, including but not limited to analyses showing how many real estate agents changed brokerages over a certain period of time or discussions about particular real estate agents moving to new brokerages.

**Request No. 20.**

All documents and communications concerning or relating to any contemplated, proposed, or actual agreement between Douglas Elliman on the one hand, and REBNY, Compass, or any other real estate brokerage on the other hand, regarding the recruitment, movement, or transfer of real estate agents, employees, or listings between or among Douglas Elliman and any other real estate brokerage.

Dated: May 25, 2022

Respectfully submitted,

*/s/ Chahira Solh*
Chahira Solh (*pro hac vice*)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
(949) 263-8400
csolh@crowell.com

Glen G. McGorty
CROWELL & MORING LLP
590 Madison Ave, 20th Floor
New York, NY 10022
(212) 223-4000
gmcgorty@crowell.com

Diane Shrewsbury (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 508-8983
dshrewsbury@crowell.com

*Attorneys for Plaintiffs*
*Compass, Inc. and Compass RE NY, LLC*