**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

COMPASS, INC. and COMPASS RE NY, LLC,

Plaintiffs,

v.

REAL ESTATE BOARD OF NEW YORK, INC.,

Defendant.

Civil Action No. 1:21-cv-2195

**MEMORANDUM OF LAW IN OPPOSITION TO DOUGLAS ELLIMAN, LLC'S MOTION FOR ATTORNEY'S FEES AND COSTS**

Dated: February 14, 2023

Chahira Solh (*pro hac vice*)
Marlee Santos (Bar No. 5770593)
Eric Fanchiang (*pro hac vice*)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
(949) 263-8400
csolh@crowell.com
msantos@crowell.com
efanchiang@crowell.com

Glen G. McGorty
CROWELL & MORING LLP
590 Madison Ave, 20th Floor
New York, NY 10022
(212) 223-4000
gmcgorty@crowell.com

*Attorneys for Plaintiffs*
*Compass, Inc. and Compass RE NY, LLC*

**TABLE OF CONTENTS**

**Page**

I. BACKGROUND .......... 2

A. Case Background .......... 2

B. Douglas Elliman Discovery Background .......... 3

II. STANDARD OF REVIEW .......... 5

III. ARGUMENT .......... 6

A. Compass's Complaint Was Not Meritless and The Subpoena Was Not Unduly Burdensome .......... 7

B. After Serving the Document Subpoena, Compass Took Reasonable Steps to Avoid Imposing an Undue Burden on Douglas Elliman .......... 8

C. Compass Had No Duty to Notify Douglas Elliman that It Began Contemplating Voluntary Dismissal .......... 12

IV. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amphenol Corp. v. Fractus, S.*
A., No. 19 MISC. 160 (PAE), 2019 WL 2521300 (S.D.N.Y. June 19, 2019)....................9, 11

*Breaking Media, Inc. v. Jowers*,
No. 21 Misc. 194 (KPF), 2021 WL 1299108 (S.D.N.Y. Apr. 7, 2021)................................6, 8

*Chevron Corp. v. Donziger*,
No. 11 Civ. 0691(LAK), 2013 WL 1087236 (S.D.N.Y. Mar. 15, 2013)........................6, 9, 11

*Freydl v. Meringolo*,
No. 09 Civ. 07196 (BSJ) (KNF), 2011 WL 1344368 (S.D.N.Y. Mar. 31, 2011).....................8

*In re Honeywell Int'l, Inc. Sec. Litig.*,
230 F.R.D. 293 (S.D.N.Y. 2003) .........................................................................................11

*Morales v. Kavulich & Assocs., P.C.*,
No. 16-CV-2134 (ALC)(JLC), 2017 WL 2712948 (S.D.N.Y. June 15, 2017) ....................5, 9

*Morgan v. Town of Dewitt*,
No. 12 Civ. 1136, 2013 WL 5217947 (N.D.N.Y. Sept. 16, 2013) ..........................................8

*Nike, Inc. v. Wu*,
No. 13 Civ. 8013 (CM), 2020 WL 257475 (S.D.N.Y. Jan. 17, 2020)......................................6

*Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*,
No. 05 Civ. 6298(PKC), 2006 WL 2996645, at *1-2 (S.D.N.Y. Oct. 13, 2006)..............10, 11

*In re Rezulin Prods. Liab. Litig.*,
No. 00 Civ. 2843 LAK, MDL No. 1348, 2003 WL 21285537 (S.D.N.Y. June 4, 2003) ...........................................................................................................5, 10, 13

*Sanborn Lib. LLC v. ERIS Info. Inc.*,
No. 19-cv-2049, 2021 WL 4316141 (S.D.N.Y. Sept. 22, 2021) .............................................6

*Shah v. RBC Cap. Markets Corp.*,
No. 10 Civ. 7672 (PGG), 2011 WL 2638139 (S.D.N.Y. July 5, 2011)...................................8

*United States v. Int'l Bus. Machines Corp.*,
62 F.R.D. 507 (S.D.N.Y. 1974) ...........................................................................................12

**Other Authorities**

Federal Rule of Civil Procedure 45 .....................................................................................5, 6

Federal Rule of Civil Procedure 45(a)(1) ....................................................................................3, 5

Federal Rule of Civil Procedure 45(d)(1) ................................................................................ *passim*

Plaintiffs Compass, Inc. and Compass RE NY, LLC (collectively, "Compass") respectfully submit this response in opposition to non-party Douglas Elliman, LLC's ("Douglas Elliman") motion for attorney's fees and costs pursuant to Federal Rule of Civil Procedure 45(d)(1) (the "Motion"). More than six weeks after this Court dismissed this case without prejudice and declined to grant similar requests for fees and costs from both a named party and a non-party, Douglas Elliman now seeks a staggering $211,678 of attorney's fees and costs for responding to Compass's subpoena for the production of documents (the "Document Subpoena"). Douglas Elliman makes this request despite never having produced a single document.

Douglas Elliman's Motion undermines its request. Douglas Elliman spends seven pages recounting the extensive meet-and-confer process and Compass's numerous concessions during that process which significantly narrowed the scope of the Document Subpoena. Nevertheless, Douglas Elliman now claims that Compass imposed an undue burden on Douglas Elliman with a "patently overbroad" Document Subpoena. Douglas Elliman further alleges, without support, that Compass had a "duty" to notify Douglas Elliman that it was contemplating dismissing this action. Contrary to Douglas Elliman's claims, the record demonstrates that Compass engaged in a good faith effort to negotiate the scope of its Document Subpoena, and more than met its responsibility under the Federal Rules of Civil Procedure to take reasonable steps to avoid imposing an undue burden on Douglas Elliman. Douglas Elliman's motion for attorney's fees and costs should be denied in its entirety.

# I. BACKGROUND

## A. Case Background

On March 21, 2021, Compass filed its complaint in this matter alleging that the Real Estate Board of New York, Inc. ("REBNY") violated the antitrust laws by conspiring to inhibit competition in the New York residential real estate market, in particular, through the adoption, modification, and selective enforcement of Article II, Section 7 of REBNY's Universal Co-Brokerage Agreement ("UCBA"). *See* Compl. ¶¶ 4-9 (ECF No. 1). The Complaint specifically named Douglas Elliman and NRT New York LLC d/b/a The Corcoran Group ("Corcoran") as REBNY's "co-conspirators." *Id.* ¶¶ 15-16.

On March 31, 2022, the Court denied REBNY's motion to dismiss Compass's allegations of violations of the Sherman and Donnelly Acts, concluding "Compass pled facts sufficient to support an inference of a conspiracy between REBNY, Corcoran, and Douglas Elliman." Opinion and Order, at 21 (ECF No. 32). On April 18, 2022, the Court issued a scheduling order stating that fact discovery needed to be complete by October 17, 2022. Civil Case Management Plan and Scheduling Order, at 2 (ECF No. 39).

On July 27, 2022, the Court denied REBNY's motion for reconsideration "as a rehash of the original motion to dismiss." Order, at 3 (ECF No. 50). On August 24, 2022, the Court issued a revised scheduling order extending the fact discovery deadline to February 17, 2023. Memo Endorsement, at 1 (ECF No. 58). In that order, the Court noted that "[n]o further discovery extensions [would] be granted absent extraordinary circumstances." *Id.*

On December 9, 2022, Compass requested a pre-motion conference with the Court, seeking voluntary dismissal of this matter. Letter from C. Solh (ECF No. 89). On December 19, 2022, the Court granted this request for voluntary dismissal without prejudice, and declined to award costs or attorney's fees to REBNY or Douglas Elliman's fellow alleged co-conspirator, Corcoran. Order,

at 2 (ECF No. 95). In considering Corcoran's request for attorney's fees and costs, the Court concluded that "listing the alleged participants in an antitrust conspiracy and negotiating over the scope of discovery requests are standard aspects of litigation, rather than undue vexatiousness." Order, at 2 (ECF No. 95). On January 6, 2023, Douglas Elliman sent a letter to Compass demanding attorney's fees. Declaration of Jessica T. Rosenberg ("Rosenberg Decl."), ¶ 18 (ECF No. 98). Compass refused, relying on this Court's prior Order. Declaration of Eric Fanchiang ("Fanchiang Decl.") at ¶ 8. Douglas Elliman did not file its motion for attorney's fees until February 2, 2023, 45 days after this matter was voluntarily dismissed without prejudice. *See generally* Motion (ECF No. 97).

**B. Douglas Elliman Discovery Background**

Consistent with standard practice and Federal Rule of Civil Procedure 45(a)(1), on May 25, 2022, Compass served Douglas Elliman with the Document Subpoena and a subpoena to testify in a deposition. *See* Rosenberg Decl., Exs. A & B. The Document Subpoena contained twenty requests for production of documents, targeting documents specifically in Douglas Elliman's custody and that were directly relevant to Compass's claims in the matter. Rosenberg Decl., Ex. A, at 7-14. On June 27, 2022, Douglas Elliman served Compass with its responses and objections to Compass's subpoenas. Rosenberg Decl. Exs. C & D. Douglas Elliman initially agreed to produce documents responsive to four of Compass's document requests and Compass willingly engaged in meet-and-confer regarding appropriate search terms, custodians, as well as Douglas Elliman's outstanding objections. Rosenberg Decl., Ex. C at 7-9.

Starting on July 28, 2022, Compass significantly narrowed the scope of the requests in the Document Subpoena and proposed deferring a number of its requests until after it had received discovery from REBNY. *See generally* Rosenberg Decl., Ex. E. Then, as confirmed by Douglas Elliman's own emails: Compass proposed search terms to assist Douglas Elliman in its subpoena

compliance; whenever those search terms returned a "disproportionate" number of hits, Compass "proposed narrowed versions"; agreed to defer four of the twenty document requests; provided additional information to assist Douglas Elliman's searches; and engaged in meet-and-confers with Douglas Elliman whenever it was asked to do so." *See id.*, at 6-7 (Sept. 27, 2022 email from J. Benson). For example, Compass proposed eight search terms to aid Douglas Elliman in identifying and collecting responsive documents. *Id.*, at 11-12 (July 28, 2022 email from D. Shrewsbury). Douglas Elliman raised concerns that the terms were "overinclusive" and would "create an undue burden." *Id.*, at 10-11 (Aug. 3, 2022 email from J. Benson). The parties had a "productive call," following which Compass again accommodated Douglas Elliman and proposed "narrower search terms," and assured Douglas Elliman that if "these still return a disproportionate amount of records . . . we can see about further refining." *Id.*, at 9 (Aug. 19, 2022 email from E. Fanchiang). A month later, after multiple follow-up emails from Compass, Douglas Elliman confirmed that the revised search terms were acceptable. *Id.*, at 7-8 (September 19, 2022 email from J. Benson).

In further meet-and-confers and communications, Douglas Elliman identified, on October 14, 2022, an additional search term that "return[ed] over 10 times as many hits as the other six combined," which would be "an undue burden for our client to review all those materials." *Id.*, at 4 (Oct. 14, 2022 email from J. Benson). Consistent with its intention to avoid undue burdens, Compass quickly responded that it understood the need for a "more feasible collection," and provided "a narrower proposal." *Id.*, at 3 (Oct. 18, 2022 email from M. Santos). According to Douglas Elliman, the "proposal still return[ed] well over four times as many hits as the other six" proposed searches. *Id.*, at 3 (Oct. 25, 2022 email from J. Benson). As with the previous concerns that Douglas Elliman brought Compass's attention, Compass endeavored to provide a reasonable solution. On November 3, 2022, Compass emailed that it was "willing to accept [Douglas

Elliman's] counterproposal" for narrowing the outstanding search terms and requested that Douglas Elliman "let us know if this is acceptable." *Id.*, at 1 (Nov. 3, 2022 email from M. Santos). Douglas Elliman ***never*** responded to Compass's email. *See* Fanchiang Decl. at ¶¶ 6-7. While Douglas Elliman initially suggested in October 2022 that it "may be able to produce by mid-to-late October" and that with the addition of two custodians "we may need until the end of this month," Douglas Elliman ***never*** produced any documents. *Id.*, at 4 (Oct. 14, 2022 email from J. Benson); Fanchiang Decl. at ¶ 7.

## II. STANDARD OF REVIEW

The "bar to success" on a non-party's motion for attorney's fees under Federal Rule of Civil Procedure 45(d)(1) is "high." *See In re Rezulin Prods. Liab. Litig.*, No. 00 Civ. 2843 LAK, MDL No. 1348, 2003 WL 21285537, at *2 (S.D.N.Y. June 4, 2003) (referring to Federal Rule of Civil Procedure 45(c)(1), the prior version of 45(d)(1)). Federal Rule of Civil Procedure 45 permits a party to serve a subpoena for the production of documents on a non-party. Fed. R. Civ. P. 45(a)(1). Rule 45(d)(1) "requires a 'sanction' only if the issuing party does not 'take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." *Morales v. Kavulich & Assocs., P.C.*, No. 16-CV-2134 (ALC)(JLC), 2017 WL 2712948, at *2 (S.D.N.Y. June 15, 2017) (quoting Fed. R. Civ. P. 45(d)(1)). Such a sanction "*may* include *reasonable* attorney's fees." Fed. R. Civ. P. 45(d)(1) (emphasis added).[1] One avenue for a court to determine whether to "sanction" the issuing party and grant attorneys' fees is to evaluate: (1) "whether the challenged subpoena imposed an undue burden or expense"; and (2) "if so, what, if any, reasonable

[1] Even in cases where a court finds sanctions under Rule 45(d)(1) are appropriate, the movant is not entitled to reimbursement of *all* attorney's fees, only "reasonable" attorney's fees. "[T]he non-party bears the burden of demonstrating that its costs and expense were reasonable." *Nike, Inc. v. Wu*, No. 13 Civ. 8013 (CM), 2020 WL 257475, at *11 (S.D.N.Y. Jan. 17, 2020). Douglas Elliman unilaterally claims its fees are "reasonable," Mot. at 11-12, yet neither Compass nor the Court can verify this, as Douglas Elliman has not produced copies of its bills.

steps, the subpoenaing party and its counsel took to avoid imposing such a burden." *Breaking Media, Inc. v. Jowers*, No. 21 Misc. 194 (KPF), 2021 WL 1299108, at *7 (S.D.N.Y. Apr. 7, 2021) (citations omitted). Ultimately, the moving party must demonstrate it has been subject to an *undue* burden or expense. *See Sanborn Lib. LLC v. ERIS Info. Inc.*, No. 19-cv-2049, 2021 WL 4316141, at *3 (S.D.N.Y. Sept. 22, 2021) ("Rule 45 does not require avoidance of all possible burdens—only *undue* burdens."). However, where a non-party is not an "ordinary, unrelated non-party witness," but rather an "alleged co-conspirator," courts are reluctant to find an undue burden. *Chevron Corp. v. Donziger*, No. 11 Civ. 0691(LAK), 2013 WL 1087236, at *32 (S.D.N.Y. Mar. 15, 2013), *adhered to on reconsideration*, No. 11 Civ. 0691(LAK), 2013 WL 1975439 (S.D.N.Y. May 14, 2013).

## III. ARGUMENT

Douglas Elliman's argument that it is entitled to attorney's fees rests on two false propositions: (1) that Compass imposed an undue burden by filing its case and serving Douglas Elliman with a subpoena, and (2) that Compass did not take reasonable steps to avoid undue burden by not notifying Douglas Elliman that it was considering dismissing its case. Both of these propositions are meritless and were already considered and rejected by the Court when Corcoran raised similar arguments in its letter seeking attorney's fees and costs. *See* Letter from N. Sarokhanian, dated December 16, 2022 (ECF No. 93). First, Douglas Elliman's claim that Compass's case was without merit is wholly unsupported and is contradicted by the fact that Compass's allegations survived both a motion to dismiss and motion for reconsideration. Second, Douglas Elliman's claim that Compass did not take reasonable steps to reduce the burden of the subpoena is directly contradicted by Douglas Elliman's own motion and declaration that demonstrate how Compass engaged in good faith negotiations and significantly narrowed the

subpoena. Third, Douglas Elliman's claim that Compass had a duty to notify it when Compass was merely contemplating dismissal is unsupported by any case law or facts.

### A. Compass's Complaint Was Not Meritless and The Subpoena Was Not Unduly Burdensome

In its Motion, Douglas Elliman contends that the Court must order Compass to reimburse Douglas Elliman's attorney's fees and costs because "Compass knew its case was meritless from the beginning." Mot. at 13. Douglas Elliman is mistaken on the facts and the law.[2] Not only did Compass's case have significant merit, but whether or not a case had merit is not grounds for Rule 45(d)(1) sanctions, particularly when the Motion is utterly devoid of any evidence that the subpoena caused undue burden.

First, Douglas Elliman's claim that Compass's case was meritless is wholly unsupported. This Court had multiple opportunities to dismiss Compass's Complaint and declined to do so. *See* ECF Nos. 32 and 50. Douglas Elliman claims that because Compass chose to dismiss its case, Compass conceded that its case has no merit.[3] This is simply untrue—as courts have widely recognized, parties routinely dismiss their cases for a variety of reasons. *See, e.g.*, *Morgan v. Town of Dewitt*, No. 12 Civ. 1136, 2013 WL 5217947, at *3 (N.D.N.Y. Sept. 16, 2013); *see also Shah v. RBC Cap. Markets Corp.*, No. 10 Civ. 7672 (PGG), 2011 WL 2638139, at *1-2 (S.D.N.Y. July 5, 2011). This Court confirmed the same—that Compass provided an "adequate explanation for dismissal" by describing, not that its allegations were meritless, but that there had been a

---

[2] It is particularly telling that Douglas Elliman marshals just five cases in its defense, two of which are not even binding on this Court. Mot. at 12-14 (citing *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 289, 202 L. Ed. 2d 136 (2018); *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982)).

[3] Douglas Elliman also claims that "Compass filed this lawsuit without a scintilla of evidence," Mot. at 2, but this is baseless speculation by Douglas Elliman as Douglas Elliman has no knowledge of Compass's documents or internal discussions. Douglas Elliman also claims that it found some document that suggests Compass's founder voted in favor of Article II, Section 7. Mot. at 5. Putting aside the fact that Douglas Elliman has never produced this document to Compass or put it before the Court, Compass's complaint goes far beyond alleging that the mere adoption of Article II, Section 7 was anticompetitive, in and of itself.

"withdrawal of certain complaints central to its claims and larger shifts in the market." Order, at 2 (ECF No. 95).

Second, "the 'undue burden' analysis is tied to the relevance of the material sought and is directly related to the court's decision to quash a subpoena for imposing an undue burden," *Breaking Media*, 2021 WL 1299108, at *7, not the merits of the plaintiff's case. Attorney's fees under Rule 45(d)(1) are only appropriate if the subpoena was issued improperly or seeks irrelevant material, "requiring the non-party to institute a motion to quash." *Freydl v. Meringolo*, No. 09 Civ. 07196 (BSJ) (KNF), 2011 WL 1344368, at *4 (S.D.N.Y. Mar. 31, 2011); *see also Breaking Media*, 2021 WL 1299108, at *7.

The Document Subpoena contained just twenty requests targeted at information relevant to the heart of the Complaint, including documents related to revisions to Article II, Section 7 of the UCBA, communications between alleged co-conspirators Corcoran and Douglas Elliman, and communications regarding property owners that wanted to move a listing over to Compass. Rosenberg Decl., Ex. A, *e.g.*, Request Nos. 2, 10, 13. In its responses and objections, Douglas Elliman agreed to produce documents responsive to certain of the requests and did not move to quash the Document Subpoena or suggest that the Document Subpoena was improper and should be withdrawn. Rosenberg Decl., Ex. C; Fanchiang Decl. at ¶ 5.

### B. After Serving the Document Subpoena, Compass Took Reasonable Steps to Avoid Imposing an Undue Burden on Douglas Elliman

Douglas Elliman argues that Compass failed to avoid imposing an undue burden or expense on Douglas Elliman, and owing only to Douglas Elliman's status as a non-party, "all of the attorney's fees Elliman incurred in this matter constitute an undue burden." Mot. at 13-14. This is a false claim that is contradicted by the record and Douglas Elliman's own statements in its motion.

First, Compass took "reasonable steps" to comply with its obligation under Federal Rule of Civil Procedure 45(d)(1) and avoid "imposing an undue burden or expense" on Douglas Elliman. Fed. R. Civ. P. 45(d)(1). When the issuing party takes reasonable steps "to assist with subpoena compliance," sanctions are not warranted. *Morales*, 2017 WL 2712948, at *2 (S.D.N.Y. June 15, 2017). Further, attorneys' fees are not warranted for "typical" compliance costs, such as for reviewing documents or engaging in meet-and-confers. *Chevron Corp.*, 2013 WL 1087236, at *32-33. Courts have found far greater costs to be reasonable for the non-party to bear under this standard. *See, e.g.*, *Amphenol Corp. v. Fractus, S*.A., No. 19 MISC. 160 (PAE), 2019 WL 2521300, at *10 (S.D.N.Y. June 19, 2019) (spending "months collecting and producing over 37,000 documents, and has further incurred additional legal fees having to respond to Fractus's multiple requests, meet and confers, improper deficiency notices, and now ***thirteen*** total subpoenas ***and*** a motion to compel . . . is not indicative of an unreasonable burden[.]") (quotations omitted).

Douglas Elliman's own detailed procedural history forecloses any argument that Compass's conduct throughout the meet-and-confer process was unreasonable. *See generally* Mot. 5-11. Rather, this history clearly shows that Compass willingly negotiated search terms, the scope and number of its requests, and proposed custodians. *Id.* Douglas Elliman spent, at most, six months, responding primarily to *one* Document Subpoena initially containing twenty requests.[4] In its responses and objections, Douglas Elliman initially agreed to produce documents in response to just four of those requests. Rosenberg Decl., Ex. C. Shortly after receiving these objections, Compass engaged Douglas Elliman in meet-and-confers, a number of which are memorialized in emails between the parties. *See generally* Rosenberg Decl., Ex. E.

[4] Douglas Elliman incorrectly claims that its counsel billed for work "which involved responding to two broad subpoenas." Mot. at 11. In the first meet-and-confer, the parties agreed to defer discussion of the subpoena for deposition testimony until after compliance with the Document Subpoena. *See* Mot. at 4; Rosenberg Decl. at ¶ 8.

At the same time, Compass voluntarily agreed to defer four of its twenty requests until after REBNY produced documents—20% of the Document Subpoena. Rosenberg Decl., Ex. F, at 2. Compass provided proposed search terms that Douglas Elliman could use to identify potentially responsive documents the same month that the parties began their meet-and-confers. *Id.*, Ex. E, at 11-12 (July 28, 2022 email from D. Shrewsbury). When the parties met-and-conferred on these eight search terms, Douglas Elliman accepted "the six more narrow search strings," but explained that the remaining two search terms returned approximately 160,000 items. Rosenberg Decl. ¶¶ 10-11. Within a week, Compass proposed narrowed search terms, that "returned approximately 23,000 items." Rosenberg Decl. ¶ 12; Ex. E, at 9-10 (Email from E. Fanchiang dated Aug. 19, 2022). In a further meet-and-confer, Compass proposed a number of additional targeted search terms, and again narrowed these terms at Douglas Elliman's request. *Id.*, at 1-4.[5]

After all this, Douglas Elliman claims it was only necessary to review 43,000 documents from four custodians, which resulted in just 3,500 responsive items. Mot. at 10. At Compass's calculation, that is an appreciable difference from the 223,800 items returned before Compass offered narrower search terms. This Court has already ruled on this exact issue following a motion for fees from non-party Corcoran and held that "negotiating over the scope of discovery requests

[5] Douglas Elliman did not inform Compass of its intention to seek reimbursement of its fees and costs during any of these meet-and-confers. *See generally* Rosenberg Decl. and Exs. A-F. While Douglas Elliman is correct that this does not foreclose a Rule 45(d)(1) motion at this time, it is not a fact that weighs in their favor. *See In Rezulin Prods. Liab. Litig.,* 2003 WL 21285537, at *2 (denying request for costs where, "[i]f it regarded those burdens as excessive, however, it had the right to obtain a court determination in advance of incurring those costs. It did not avail itself of that opportunity."). Douglas Elliman relies on *Prescient Acquisition* to argue that its motion to attorney's fees—filed a month-and-a-half after this matter was voluntarily dismissed—remains timely. Mot. at 13. However, the court in *Prescient Acquisition* concluded that the subpoenaed party's post-compliance request was timely because the subpoenaed party stated in correspondence during meet-and-confers that it "believe[d] all of its legal fees and other costs incurred in connection with responding to the Subpoena should be paid by [plaintiff]" and reiterated this position immediately after producing documents, which was confirmed, in writing, by the plaintiff. *Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*, No. 05 Civ. 6298(PKC), 2006 WL 2996645, at *1-2 (S.D.N.Y. Oct. 13, 2006) (citations omitted). Thus, the court concluded that the non-party "placed plaintiff on notice of its intention to seek fees and expenses prior to compliance." *Id.* at *2.

are ***standard aspects of litigation***, rather than undue vexatiousness." Order, at 2 (ECF No. 95) (responding to alleged co-conspirator Corcoran's request for attorney's fees and costs) (emphasis added). It would stress judicial resources to permit a subpoenaed party to successfully petition the court for costs any time it incurred reasonable costs in response to an appropriately narrowed subpoena. Douglas Elliman has not met its burden to show that responding to the Document Subpoena resulted in an undue burden or expense.

Second, every cost that Douglas Elliman incurred does not transform into an undue burden merely because it is a non-party. In evaluating the appropriateness of awarding attorney's fees, courts regularly consider whether the non-party "has an interest in the outcome of the case," "can more readily bear the costs" of compliance, and "whether the litigation is of pubic importance." *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 302–03 (S.D.N.Y. 2003) (quotations omitted). A non-party enmeshed in the conduct underlying the complaint is "not a classic disinterested party." *Id.*; *see also Amphenol Corp.*, 2019 WL 2521300, at *10; *Chevron Corp.*, 2013 WL 1087236, at *33.

Douglas Elliman's attempt to paint itself as no more than an "innocent competitor[]" is unavailing. Mot. at 14. Compass's Complaint explicitly named Douglas Elliman as a co-conspirator in an antitrust conspiracy. *See* Compl. ¶ 16. While Douglas Elliman may disagree, Compass's Complaint endured multiple challenges to the sufficiency of its allegations that included allegations regarding Douglas Elliman's role in the anticompetitive conduct. *See* ECF Nos. 32 and 50. Further, Douglas Elliman provides no indication that it cannot bear the costs of complying with one measurably-narrowed subpoena for the production of documents. As to the public's interest in this action, Compass's Complaint alleged that Douglas Elliman was a co-conspirator in an anticompetitive scheme to hamper innovation in the New York residential real

estate market which "is one of the most expensive and active real estate markets in the United States" consisting of "billions of dollars in residential real estate transaction in the city each year." Compl., ¶¶ 4-9, 26. Alleged violations of the antitrust laws by their nature implicate the public interest. *See, e.g.*, *United States v. Int'l Bus. Machines Corp.*, 62 F.R.D. 507, 509 (S.D.N.Y. 1974) (denying subpoenaed party's request for costs and explaining that "all citizens have an interest in . . . a major antitrust suit.") (citations omitted). Thus, Douglas Elliman had a clear interest in the outcome of this litigation, provided no evidence it could not bear the cost of compliance, and the matter implicated the public interest in alleged antitrust violations.

### C. Compass Had No Duty to Notify Douglas Elliman that It Began Contemplating Voluntary Dismissal

Perhaps recognizing that it cannot establish that Compass was unreasonable in discovery negotiations, Douglas Elliman then argues that "[o]nce Compass began considering [the] possibility [that it may voluntarily dismiss this action], it had the obligation to inform Elliman so that Elliman could, at a minimum, put its review of [sic] hold." Mot. at 14. Compass is aware of no such duty—nor does Douglas Elliman cite to one. Such a duty would be wholly unreasonable and unworkable. Due to Douglas Elliman's failure to respond to its last correspondence, Compass lacked any knowledge of these supposed "tens of thousands of documents" that Douglas Elliman was "in the thick of" reviewing in November and December. Mot. at 14; Fanchiang Decl. at ¶ 7. Moreover, the Court made clear that it would not alter the discovery schedule further. Memo Endorsement, at 1 (ECF No. 58). Notifying a non-party of the *possibility* Compass might dismiss its case would almost certainly have impacted Douglas Elliman's compliance with the subpoena, putting Compass at risk of not meeting the Court's proximate discovery deadline.

Further, Douglas Elliman provides no support for its accusation that Compass had begun considering dismissal by early November. Mot. at 3. Indeed, the record shows the opposite—

Compass was actively pursuing a motion to compel against another non-party and was continuing to negotiate search terms with REBNY. *See, e.g.*, Joint Status Letter dated Nov. 17, 2022 (ECF No. 87); Letter from E. Fanchiang dated Sept. 29, 2022 (ECF No. 68); Joint Letter dated Nov. 14, 2022 (ECF No. 84). It was also actively engaged in discovery with Douglas Elliman itself. Contrary to Douglas Elliman's suggestion, the parties never "reached agreement on the final search string for the agreed-upon custodians," because Douglas Elliman *never* responded to Compass's last email. Mot. at 3; Fanchiang Decl. at ¶¶ 6-7. It strains credulity to pin Compass's supposedly unreasonable behavior on information that Douglas Elliman failed to provide. *See In Rezulin Prods. Liab. Litig.*, 2003 WL 21285537, at *33 (finding no "breach[ of] duty to take reasonable steps to avoid undue burden" when the non-party never shared that it "was incurring any incremental costs, apart from copying and delivery charges, attributable to subpoena compliance").

## IV. CONCLUSION

Douglas Elliman has not met its burden under Federal Rule of Civil Procedure 45(d)(1) to show that Compass imposed an undue burden on Douglas Elliman or failed to take reasonable steps to reduce that burden such that sanctions in the form of attorney's fees are warranted. For the foregoing reasons, the Court should deny Douglas Elliman's motion for attorney's fees and costs.

Dated: February 14, 2023

Respectfully submitted,

*/s/ Chahira Solh*

Chahira Solh (*pro hac vice*)
Marlee Santos (Bar No. 5770593)
Eric Fanchiang (*pro hac vice*)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
(949) 263-8400
csolh@crowell.com
msantos@crowell.com
efanchiang@crowell.com

Glen G. McGorty
CROWELL & MORING LLP
590 Madison Ave, 20th Floor
New York, NY 10022
(212) 223-4000
gmcgorty@crowell.com

*Attorneys for Plaintiffs*
*Compass, Inc. and Compass RE NY, LLC*

**CERTIFICATE OF SERVICE**

I certify that on February 14, 2023, a true and correct copy of the foregoing was filed with the Court's electronic case filing (ECF) system, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.

*/s/ Chahira Solh*

Chahira Solh (pro hac vice)