IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMPASS, INC. and COMPASS RE NY LLC,<br><br>Plaintiffs,<br><br>v.<br><br>REAL ESTATE BOARD OF NEW YORK, INC.,<br><br>Defendant. | Case No.: 1:21-cv-02195-LGS |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY SUBPOENA
RECIPIENT DOUGLAS ELLIMAN, LLC'S MOTION FOR ITS REASONABLE
ATTORNEY'S FEES INCURRED IN RESPONDING TO PLAINTIFFS' SUBPOENAS**

**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700

*Attorneys for Non-Party Subpoena Recipient
Douglas Elliman, LLC*

**TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| ARGUMENT | | 5 |
| A. | All of Elliman's Work Responding to Compass's Subpoena That Should Not Have Been Issued Constitutes an Undue Burden | 5 |
| B. | Compass Should Have Given Elliman Notice of its Plans to Dismiss its Suit | 9 |
| CONCLUSION | | 10 |

-ii-

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Breaking Media, Inc. v. Jowers*,
  2021 WL 1299108 (S.D.N.Y. Apr. 7, 2021) .............................................................................. 1, 7, 9

*Chevron Corp v. Donziger*,
  2013 WL 1087236 (S.D.N.Y. Mar. 15, 2013) ................................................................................ 3, 8

*Freydl v. Meringolo*,
  2011 WL 1344368 (S.D.N.Y. Mar. 31, 2011) ................................................................................... 4

*In re: Mod. Plastics Corp.*,
  890 F.3d 244 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 289 (2018) ............................................ 1, 3, 7, 8

*In re Novartis & Par Antitrust Litig.*,
  No. 18 CIV. 4361 (AKH), 2020 WL 3317203 (S.D.N.Y. June 18, 2020) ............................... 2, 3, 4, 7

*In re Rezulin Prod. Liab. Litig.*,
  2003 WL 21285537 (S.D.N.Y. June 4, 2003) (cited by Compass at Opp. ) ....................................... 10

**Other Authorities**

Federal Rule of Civil Procedure 45(d)(1) ............................................................................... *passim*

Non-party subpoena recipient Douglas Elliman, LLC ("Elliman"), by its undersigned counsel, respectfully submits this reply memorandum of law in further support of its motion, pursuant to Federal Rule of Civil Procedure 45(d)(1) ("Motion"), for its reasonable attorney's fees and costs incurred in responding to two subpoenas issued by Compass, Inc. and Compass NY RE, LLC (collectively, "Compass" or "Plaintiff"), and in support thereof respectfully represents as follows:[1]

## PRELIMINARY STATEMENT

In its Motion, Elliman demonstrated that Compass (i) knowingly filed a meritless case, (ii) issued subpoenas to non-party Elliman that should not have been issued, and (iii) failed to notify Elliman for an entire month that it should cease incurring legal fees because Compass had determined it would dismiss the meritless case. Compass's opposition to the Motion ("Opposition") does not sufficiently address these points but does confirm the law (in a case it cites three times): "When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45([d])(1)." *Breaking Media, Inc. v. Jowers*, 2021 WL 1299108, at *7 (S.D.N.Y. Apr. 7, 2021) (citation and internal quotation marks omitted). That is precisely what happened here. It was an undue burden on Elliman to respond to, work to narrow, and review documents and prepare a production set in response to a subpoena that Compass should never have issued.[2]

Compass's Opposition has failed to address and does not deny – because it can't – that its founder and chief executive officer (and then-REBNY representative) voted in favor of the very

---

[1] Undefined capitalized terms shall have the meanings ascribed to them in Elliman's opening memorandum of law. *See generally* ECF No. 97.

[2] Even assuming that Compass did not intentionally bring a meritless case, Elliman's legal fees should be covered because bad faith is not a prerequisite to an award of attorney's fees under Rule 45(d)(1). *See In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 289 (2018).

REBNY rule that Compass claimed was the crux of the antitrust conspiracy underlying its complaint. *See generally* ECF No. 99 ("Opp."); *see also* ECF No. 98 at ¶ 21. Compass therefore should never have brought its suit and issued the corresponding subpoenas. Compass tries to defend the merits of its suit by pointing to the fact that its complaint survived a motion to dismiss. *See* Opp. at 6-8. But the fact that a complaint survives a motion to dismiss is not evidence that a case has merit; it is only evidence that a complaint meets pleading standards. In ruling on the motion to dismiss in this case, the Court did not consider the fact that Compass itself voted in favor of the rule that purportedly embodied an anti-Compass conspiracy and was purportedly "conceived specifically with thwarting Compass is mind." ECF No. 1 ¶ 6.

Further demonstration of the lack of merit in Compass's case is that Compass sought voluntary dismissal of its own case, before even receiving the fruits of any discovery,[3] and without citing any changes to REBNY rules or changes in Elliman's behavior. Compass thus conceded, at the very least, that its suit was not worth maintaining and that all of the discovery obligations it placed on Elliman were entirely superfluous.

In these circumstances, Compass should be sanctioned under Rule 45(d)(1) for forcing a non-party to incur substantial legal fees in a case Compass conceded was not worth maintaining, and Elliman should be awarded its attorney's fees. A non-party subpoena recipient "'is protected against significant expense resulting from involuntary assistance to the court.'" *In re Novartis &*

---

[3] Contrary to Compass's implications, *see* Opp. at 1, it does not matter that Elliman never actually produced the documents it reviewed and prepared for production in response to Compass's subpoenas. Within days of Elliman preparing a final production set, Compass sought to voluntarily dismiss its suit. And to that point, the parties to the case themselves had not yet exchanged any discovery. It was of course only reasonable for Elliman to wait until the parties themselves began producing documents (which would indicate, for example, that the parties could not settle prior to the receipt of discovery materials) before Elliman produced its confidential information to a competitor. But the fact that Elliman never actually produced the materials is due entirely to Compass's own decision to dismiss rather than to prosecute its case. Compass does not question that Elliman actually did the work to conduct a document review of approximately 43,000 items and prepare a production set of approximately 3,500 items—all at Compass's instigation.

*Par Antitrust Litig.*, No. 18 CIV. 4361 (AKH), 2020 WL 3317203, at *5 (S.D.N.Y. June 18, 2020) (quoting Fed. R. Civ. P. 45 Application Note); *see also id.* ("Trial courts have broad discretion to determine whether a subpoena imposes an undue burden" and "courts are instructed to be especially solicitous of non-party targets of subpoenas" (citations and internal quotation marks omitted)).

"Undue burden is to be assessed in a case-specific manner," *In re: Mod. Plastics Corp.*, 890 F.3d at 251, and here—where Compass should never have filed its suit and conceded (by dropping its suit) that the obligations it placed on Elliman were entirely superfluous—Elliman has plainly suffered an undue burden. The cases Compass cites involve completely different circumstances. For example, Compass cites *Chevron Corp v. Donziger*, 2013 WL 1087236 (S.D.N.Y. Mar. 15, 2013) three times, including for the proposition that "courts are reluctant to find an undue burden" where the non-party is an alleged co-conspirator. *See* Opp. at 6, 9, 11 (*citing* 2013 WL 1087236 (S.D.N.Y. Mar. 15, 2013)). But that case could not be further afield from the situation here. There, Chevron alleged that the defendants violated RICO by obtaining through fraud an $18.2 billion judgment against Chevron in an Ecuadorian court. *See* 2013 WL 1087236 at *1. The court denied non-party law firm Patton Boggs LLP's motion for fees for responding to Chevron's discovery requests, and in doing so, the court explained that Patton Boggs had represented the plaintiffs in the Ecuadorian action and stood "to reap a fee that has been estimated at hundreds of millions of dollars if the [Ecuadorian judgment] is enforced and collected." *Id.* at *32. The court further explained that Patton Boggs "has sued Chevron on its own behalf at least three times on claims relating to this controversy." *Id.* at 1. These considerations—not simply the mere fact that Patton Boggs was an alleged co-conspirator—led the court to refer to Patton Boggs as "no ordinary, unrelated non-party witness[.]" *Id.* at *32. Meanwhile, none of Compass's cases

deal with the scenario at issue here, where basic facts that the plaintiff knew or should have known flatly disprove its allegations, and where the plaintiff itself sought dismissal of its own case, even before receiving any fruits of discovery—thereby conceding that its case was, at the very least, not worth maintaining, and that the discovery obligations it placed on subpoena recipients were superfluous and undue burdens.[4]

Compass further fails to explain why it did nothing to curtail Elliman's burden at the point it decided to drop the meritless lawsuit. Indeed, when, in its Opposition, Compass states it "is aware of no such duty" (Opp. at 12) to inform Elliman that it would dismiss its suit (which would have reduced the burden on Elliman), Compass essentially admits it never considered itself responsible to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" as required under the law. Fed. R. Civ. P. 45(d)(1).

If Elliman is not "'protected against significant expense resulting from involuntary assistance to the court,'" *In re Novartis & Par Antitrust Litig.*, 2020 WL 3317203, at *5 (quoting Fed. R. Civ. P. 45 Application Note), then future plaintiffs and subpoena recipients will be incentivized to engage in bad faith litigation and dilatory tactics. If Compass's behavior is not sanctioned, it will incentive the filing of baseless actions that force non-parties to run up legal fees. Likewise, if Elliman is not reimbursed, subpoena recipients will be incentivized to delay and

---

[4] Compass chides Elliman for citing relevant law from the Sixth and Ninth Circuits. *See* Opp. at 7 n. 2. But Compass should be wary of casting stones over the entirely appropriate practice of citing relevant (even if non-binding) cases; Compass's opposition, among other shortcomings, relies on inaccurate citations to reach mistaken conclusions of law. For example, Compass cites *Freydl* for the false proposition that attorney's fees under Rule 45(d)(1) are only appropriate if the party seeking fees brought a motion to quash. *See* Opp. at 8 (citing *Freydl v. Meringolo*, 2011 WL 1344368, at *4 (S.D.N.Y. Mar. 31, 2011)). Compass's false conclusion of law emanates from the fact that it misattributed to the *Freydl* court language from the court's opinion that was actually a quote from one of the party's arguments—language that the court in no way adopted. *Compare* Opp. at 8 *with Freydl*, 2011 WL 1344368, at *4. And Compass even misunderstood the statement that it misattributed to the court. The party was not arguing that an award of fees under Rule 45(d)(1) requires the party seeking compensation to file a motion to quash; rather, the party was arguing that the fact that it was required to bring a motion to quash supported an award of fees. *Id.*

contest the validity of subpoenas until the last possible moment. Corcoran chose an adversarial strategy that required intervention from this Court, yet Corcoran only incurred approximately $82,000 in fees. Elliman, meanwhile, cooperated with the utmost good faith, yet incurred over twice as much as Corcoran in fees. The fees incurred from November 2022 through early December 2022 are particularly egregious, because Compass failed to notify Elliman that it was going to seek dismissal of its suit so that Elliman could stop reviewing and preparing documents for production in response to Compass's subpoena. Compass fails to provide any explanation for that conduct other than to claim it had no obligation to notify Elliman. If Compass is not sanctioned for this conduct and Elliman is not awarded its fees, Corcoran's strategy will provide future subpoena recipients with the most economically rational precedent for responding to subpoenas.

## **ARGUMENT**

**A.     All of Elliman's Work Responding to Compass's Subpoena
That Should Not Have Been Issued Constitutes an Undue Burden**

Compass's entire case was premised on an alleged conspiracy – to adopt Article II, Section 7 – that never existed. *See generally* ECF No. 1. The complaint refers to Article II, Section 7 no less than 76 (seventy-six) times, including in its prayer for relief, which asked the Court to enjoin the enforcement of that rule. *See generally id.* Like the complaint generally, the "Harm to Competition" section focuses entirely on Article II, Section 7. *Id.* ¶¶ 106-111. And in pleading the "contract, combination, or conspiracy" element of the antitrust counts under the Donnelly and Sherman Acts, Compass alleged that "[t]he specific agreements at issue are the adoption and selective enforcement of Article II, Section 7, and an agreement between REBNY and its co-conspirators to prevent Compass from being able to hire and recruit qualified agents." *Id.* ¶¶ 128, 137. Compass's subpoenas on Elliman underscore the centrality of Article II, Section 7 to

Compass's case. Compass's very first document request was for "[a]ll documents and communications concerning the development and adoption of Article II, Section 7" and its very first deposition topic was "Elliman's involvement with and knowledge of the development and adoption of Article II, Section 7[.]" *See* ECF No. 98, Ex A at 7, Ex. B at 7.  Compass's complaint alleged in particular that "*in January 2018*, after a campaign spearheaded by Corcoran and Douglas Elliman and in conjunction with REBNY as an independent entity, REBNY adopted Article II, Section 7, of the UCBA….to impede competition, particularly from Compass[.]"  ECF No. 1 ¶¶ 61-63 (emphasis added).

Compass's complaint intentionally left out the fact that Robert Reffkin, Compass's founder and chief executive officer (and then-REBNY representative), voted on January 9, 2018 to adopt Article II, Section 7—the very same rule that Compass falsely alleged "was conceived specifically with thwarting Compass in mind." ECF No. 1 ¶ 6; *see also* ECF No. 98 at ¶ 21.  And Compass does not now, because it cannot, deny that its founder and chief executive officer voted in favor of Article II, Section 7.  *See generally* Opp.[5]

The fact that Compass voted in favor of adopting a rule, the adoption of which Compass claimed was the central act of the alleged conspiracy, demonstrates unmistakably that Compass should not have brought its case and should not have issued the corresponding subpoenas, including those on Elliman.  This is only underscored by the fact that Compass sought to voluntarily dismiss its case before even receiving any fruits of discovery—a concession that, at the very least, Compass thought its case was not worth maintaining.  And "[w]hen a subpoena

---

[5] Compass complains that Elliman never provided documentary evidence of Reffkin's vote to Compass, *see* Opp. at 7 n. 3, but surely the emails by which the REBNY board voted to adopt Article II, Section 7—including the affirmative vote by Compass's founder and chief executive officer—are such documents that Compass would have reviewed or should have reviewed before bringing an antitrust case premised on the adoption of Article II, Section 7. In any event, as Elliman previously indicated, it is more than willing to share this evidence with the Court and Compass, if requested.

should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45([d])(1)." *Breaking Media, Inc. v. Jowers*, 2021 WL 1299108, at *7 (S.D.N.Y. Apr. 7, 2021) (citation and internal quotation marks omitted); *see also* Opp. at 6, 8 (citing *Breaking Media*). Thus, "everything done" by Elliman "in response to" Compass's subpoenas "constitutes 'undue burden or expense'" on Elliman "within the meaning of [] Rule 45([d])(1)." *Id.*

Indeed, the "case-specific" circumstances here present a particularly compelling instance for a sanction under Rule 45(d)(1) and an award of fees to Elliman. *See In re: Mod. Plastics Corp.*, 890 F.3d at 251 ("Undue burden is to be assessed in a case-specific manner"). There is certainly evidence that Compass knowingly filed a meritless case, and thus instituted its lawsuit and issued the corresponding subpoenas in bad faith, yet bad faith is not even a prerequisite for an award of attorney's fees under Rule 45(d)(1). *Id.* Moreover, "undue burden" may be found under Rule 45 even where the materials sought are relevant to an ongoing dispute. *See, e.g.*, *In re Novartis & Par Antitrust Litig.*, 2020 WL 3317203, at *6 (awarding non-party attorney's fees, even though "the materials requested by the subpoena are relevant to this complex dispute," because "complying with Plaintiffs' subpoena would impose a burden on" the non-party subpoena recipient); *see also id.* at *5 ("Trial courts have broad discretion to determine whether a subpoena imposes an undue burden" and "courts are instructed to be especially solicitous of non-party targets of subpoenas" (citation and internal quotation marks omitted)). *A fortiori*, "undue burden" should be found here, where Plaintiff voluntarily withdrew its suit before even receiving any discovery, indisputably rendering superfluous Compass's subpoenas and all of Elliman's efforts in response.

That Compass pled Elliman as a co-conspirator does not alter the conclusion that

Compass's entire subpoena placed an undue burden on Elliman. The cases Compass cites involve completely different circumstances from those present here. For example, Compass cites *Chevron Corp v. Donziger* three times, including for the proposition that "courts are reluctant to find an undue burden" where the non-party is an alleged co-conspirator. *See* Opp. at 6, 9, and 11 (*citing* 2013 WL 1087236 (S.D.N.Y. Mar. 15, 2013)). But that case could not be further afield from the situation here. *Chevron Corp.* involved a law suit brought by plaintiff Chevron Corporation against dozens of individuals and their lawyers, in which Chevron alleged that the defendants violated RICO by obtaining through fraud an $18.2 billion judgment against Chevron in an Ecuadorian court. *See* 2013 WL 1087236 at *1. The court denied non-party law firm Patton Boggs LLP's motion for fees for responding to Chevron's discovery requests, and in doing so, the court explained that Patton Boggs had represented the plaintiffs in the Ecuadorian action (i.e., the defendants in *Chevron Corp.*) and stood "to reap a fee that has been estimated at hundreds of millions of dollars if the [Ecuadorian judgment] is enforced and collected." *Id.* at *32. The court further explained that Patton Boggs "has sued Chevron on its own behalf at least three times on claims relating to this controversy." *Id.* at 1. These considerations—not simply the mere fact that Patton Boggs was an alleged co-conspirator—led the court to refer to Patton Boggs as "no ordinary, unrelated non-party witness[.]" *Id.* at *32. Meanwhile, "[u]ndue burden is to be assessed in a case-specific manner," *In re: Mod. Plastics Corp.*, 890 F.3d at 251, and none of Compass's cases deal with the scenario at issue here, where basic facts that the plaintiff knew or should have known flatly disprove its allegations and the plaintiff itself sought dismissal of its own case, even before receiving any fruits of discovery—thereby conceding that the case was, at the very least, not worth maintaining, and thereby also conceding that the discovery obligations the case made on subpoena recipients constituted unnecessary, superfluous, and undue burdens.

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Because Compass's case should never have been brought, and its "subpoena should not have been issued, literally everything done [by Elliman] in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45([d])(1)."[6] *Breaking Media, Inc. v. Jowers*, 2021 WL 1299108, at *7 (citation and internal quotation marks omitted). Compass admitted as much when it voluntarily dismissed its suit, before receiving any discovery, and without citing any changes in REBNY rules or Elliman's behavior.

### B.   Compass Should Have Given Elliman Notice of its Plans to Dismiss its Suit

Even if the entirety of Compass's subpoena were not an undue burden on Elliman (which it was), Compass further failed "to avoid imposing undue burden or expense on" Elliman when it failed to notify Elliman that it was going to seek voluntary dismissal of its suit. *See* Fed. R. Civ. P. 45(d)(1). Thus, for the period of at least November 2022 through early December 2022, there is a second, independent reason for awarding Elliman its fees. There is no question that Compass was aware that in October and November 2022, Elliman was in the thick of and completing a review of tens of thousands of documents, and preparing a final production set—having been prodded by Compass into doing so. *See generally*, *e.g.*, ECF No. 98, Ex. E.[7] Yet at the same

---

[6]   Because of this, it is irrelevant that Compass's counsel eventually agreed to narrow some requests (of course, only after advocacy for which Elliman paid). *See* Opp. at 8-12. Every aspect of Compass's subpoenas and all of Elliman's work in response constituted an undue burden and expense. Thus, whatever steps Compass did take to narrow its subpoenas were not sufficiently "reasonable" so as "to avoid imposing such a burden." *Breaking Media*, 2021 WL 1299108 at *7.

[7]   Compass's false claim that the parties did not reach agreement on the final search string, *see* Opp. at 13, would be irrelevant even if it were true. Compass would still have been aware of the fact, as discussed multiple times on meet-and-confers and memorialized in email correspondence, that Elliman was preparing a production set based on fourteen other search strings for four custodians (and was aiming to have a complete set ready by the end of November). In any case, Compass's claim that agreement was not reached on the fifteenth term is based on the fact that Elliman never responded to an email in which Compass stated it was "willing to accept [Elliman's]

time, Compass was considering—and at some point, decided to seek—voluntary dismissal of suit. Certainly Compass did not decide out of the blue on the morning of December 9 to dismiss this suit, yet it never told Elliman to halt its work.

Compass responds to this point only to say it had no obligation to notify Elliman. *See* Opp. at 12-13. This response goes to the very heart of the matter and Rule 45. By claiming it "is aware of no such duty" (*id.* at 12) to inform Elliman that it would be dismissing its case, Compass admits it never saw itself as responsible to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" as required under the law. Fed. R. Civ. P. 45(d)(1).

But Compass's duty to inform Elliman is plain from the face of Rule 45, as acknowledged by one of the cases cited in Compass's Opposition. By failing to prevent Elliman from the further expense of conducting a document review Compass knew was superfluous, Compass "breached the Rule 45([d])(1) duty" because it was "informed of circumstances that rendered compliance unduly burdensome or expensive but declined to take reasonable steps to alleviate the situation." *In re Rezulin Prod. Liab. Litig.*, 2003 WL 21285537, at *2 (S.D.N.Y. June 4, 2003) (cited by Compass at Opp. at 5, 10, and 13).

## CONCLUSION

For all the foregoing reasons, the Court should grant non-party Elliman's Motion in its entirety and grant such other and further relief as it deems just and proper.

---

counterproposal" for the final search string, subject to the correction of two typos that were relics from Compass's original proposal. *See* ECF No. 98, Ex. E at 1. Compass's acceptance of Elliman's counterproposal constituted the parties' agreement; Compass did not think and had no reason to think—especially given the utmost good faith that Elliman demonstrated throughout—that Elliman would object to the correction of two typos.

Dated: February 21, 2023
New York, New York

           KASOWITZ BENSON TORRES LLP

           By: */s/ Jessica T. Rosenberg*
           Jessica T. Rosenberg
           (jrosenberg@kasowitz.com)
           1633 Broadway
           New York, New York 10019
           Telephone:  (212) 506-1700
           Facsimile:  (212) 506-1800

           *Counsel to Non-Party Douglas Elliman, LLC*